IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DEREK CARDER, an individual,
MARK BOLLETER, an individual,
DREW DAUGHERTY, an individual, and
ANDREW KISSINGER, an individual, on
behalf of themselves and all others similarly
situated,                                                           Case No. 4:09-cv-03173

     Plaintiffs,

v.

CONTINENTAL AIRLINES, INC., et al.,

     Defendants.

---

**MOTION TO DISMISS OF
DEFENDANT CONTINENTAL AIRLINES, INC.**

---

Respectfully submitted,

/s/   Jeffrey C. Londa
Jeffrey C. Londa, TX #12512400, Fed. ID 00506
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
jeffrey.londa@ogletreedeakins.com
500 Dallas Street, Suite 3000
Houston, Texas 77002-4709
(713) 655-5750 (Phone)
(713) 655-0020 (Fax)

**ATTORNEY-IN-CHARGE FOR DEFENDANT
CONTINENTAL AIRLINES, INC.**

Of Counsel:
Flyn L. Flesher, TX #24059756, Fed. ID 873686
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
flyn.flesher@ogletreedeakins.com
500 Dallas Street, Suite 3000
Houston, Texas 77002-4709
(713) 655-5752 (Phone)
(713) 655-0020 (Fax)

TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

NATURE & STAGE OF THE PROCEEDINGS.............................................................1

STATEMENT OF THE ISSUES.........................................................................................2

SUMMARY OF THE ARGUMENT..................................................................................2

STANDARD OF REVIEW..................................................................................................3

ARGUMENTS & AUTHORITIES....................................................................................4

    A.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' FIRST AND SECOND CAUSES OF ACTION BECAUSE THEY ARE PRECLUDED BY THE RAILWAY LABOR ACT..........................................................................................4

        1.    Plaintiffs' First Cause of Action Is Precluded by the RLA's Mandatory Arbitration Provision, Thereby Depriving This Court of Jurisdiction.................6

        2.    Plaintiffs' Second Cause of Action Is Precluded by the RLA's Mandatory Arbitration Provision, Thereby Depriving This Court of Subject Matter Jurisdiction. .......................................................................................................13

    B.    PLAINTIFFS' SECOND CAUSE OF ACTION IS PRECLUDED BECAUSE PLAINTIFFS FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES AND FAILED TO NAME AN INDISPENSABLE PARTY..........................................................................................15

        1.    The B-Plan Is an ERISA Plan. ...........................................................................15

        2.    Plaintiffs Have Failed to Exhaust Their Remedies under the B-Plan. ...............16

        3.    Plaintiffs Have Failed to Join the Plan as a Party Required under Rule 19.......17

    C.    PLAINTIFFS' THIRD CAUSE OF ACTION ALLEGING A "HOSTILE WORK ENVIRONMENT" IS NOT A COGNIZABLE CLAIM UNDER USERRA. ...............................18

        1.    USERRA Does Not Create Liability for a Hostile Work Environment. ............18

        2.    Regardless of Whether USERRA Permits Hostile Work Environment Claims, Plaintiffs' Allegations Fall Short of Establishing Such a Claim. .........................23

    CONCLUSION.....................................................................................................................25

## TABLE OF AUTHORITIES

Page(s)

**CASES**

Amato v. Bernard,
  618 F.2d 559 (9th Cir. 1980) ..................................................................................... 16

Ashcroft v. Iqbal,
  129 S.Ct. 1937 (2009) ........................................................................................... 3, 24

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ............................................................................................... 3, 24

Bell v. Atchison, Topeka & Santa Fe Ry.,
  751 F. Supp. 667 (E.D. Tex. 1990) ............................................................................. 6

Bloemer v. Northwest Airlines, Inc.,
  401 F.3d 935 (8th Cir. 2005) .............................................................................. 13, 14

Boudreau v. U.S.,
  53 F.3d 81 (5th Cir. 1995) .......................................................................................... 4

Brock v. Baskin-Robbins USA Co.,
  113 F.Supp.2d 1078 (E.D. Tex. 2000) ........................................................................ 7

Brown v. Ill. Cent. R.R.,
  254 F.3d 654 (7th Cir. 2001) ....................................................................... 5, 6, 7, 10, 11

Burlington N. & Santa Fe Ry. v. United Transp. Union,
  No. 08-11149, 2009 WL 2029821 (5th Cir. July 13, 2009) ....................................... 5

Carmona v. Southwest Airlines,
  536 F.3d 344 (5th Cir. 2008) .................................................................................. 8, 9

Church v. City of Reno,
  No. 97-17097, 168 F.3d 498, 1999 WL 65205 (9th Cir. Feb. 9, 1999) ................... 21

Circuit City Stores, Inc. v. Adams,
  532 U.S. 105 (2001) ............................................................................................ 22, 23

Crowell v. Shell Oil Co.,
  541 F.3d 295 (5th Cir. 2008) ................................................................................... 16

CWA v. AT&T Co.,
  40 F.3d 426 (D.C. Cir. 1999) ................................................................................... 16

Dees v. Hyundai Motor Mfg. Alabama, LLC,
  605 F. Supp. 2d 1220 (M.D. Ala. 2009) .................................................................. 22

Denton v. First Nat'l Bank of Waco,
    765 F.2d 1295 (5th Cir. 1985) ................................................................................ 16

Eret v. Continental Holding, Inc.,
    838 F.Supp. 358 (N.D. Ill. 1993) ............................................................................ 16

Fed. Express Corp. v. Holowecki,
    552 U.S. ___, 128 S.Ct. 1147 (2008) ...................................................................... 23

Figueroa Reyes v. Hospital San Pablo del Este,
    389 F.Supp.2d 205 (D.P.R. 2005) ............................................................................ 24

Gadberry v. Bethesda, Inc.,
    608 F.Supp.2d 916 (S.D. Ohio 2009) ...................................................................... 18

Gallegos v. Mt. Sinai Med. Ctr.,
    210 F.3d 803 (7th Cir.), cert. denied, 531 U.S. 827 (2000) ...................................... 16

Gross v. FBL Financial Services
    129 S.Ct. 2343 (2009) ............................................................................................ 21

Hansen v. Cont'l Ins. Co.,
    940 F.2d 971 (5th Cir. 1991) .................................................................................... 17

Harris v. Forklift Sys., Inc.,
    510 U.S. 17, 114 S.Ct. 367 (1993) .......................................................................... 24

Hastings v. Wilson,
    516 F.3d 1055 (8th Cir. 2008) ...................................................................... 5, 13, 14

Hawaiian Airlines, Inc. v. Norris,
    512 U.S. 246 (1994) ............................................................................................ 4, 5

Int'l Union v. Auto Glass Employees Fed. Credit Union,
    858 F.Supp. 711 (M.D. Tenn. 1994) ........................................................................ 18

Jenisio v. Ozark Airlines Inc. Ret. Plan for Agent & Clerical Employees,
    187 F.3d 970 (8th Cir. 1999) ...................................................................................... 5

Kinkead v. Sw. Bell Corp.,
    111 F.3d 67 (8th Cir. 1997) ...................................................................................... 16

Ledesma v. Dillard Dept. Stores,
    818 F. Supp. 983 (N.D. Tex. 1993) ............................................................................ 4

Long v. Flying Tiger Line, Inc.,
    994 F.2d 692 (9th Cir. 1993) .............................................................................. 13, 14

Lovelace v. Software Spectrum,
    78 F.3d 1015 (5th Cir. 1996) ...................................................................................... 3

Maher v. City of Chicago,
   406 F. Supp. 2d 1006 (N.D. Ill. 2006) ................................................................. 22

Makar v. Health Care Corp.,
   872 F.2d 80 (4th Cir. 1989) .................................................................................. 16

Meritor Sav. Bank, FSB v. Vinson,
   477 U.S. 57 (1986) ......................................................................................... 19, 24

Miller v. Am. Airlines, Inc.,
   525 F.3d 520 (7th Cir. 2008) .................................................................................. 6

Miller v. City of Indianapolis,
   281 F.3d 648 (7th Cir. 2002) ................................................................................ 24

Miller v. City of Indianapolis,
   No. IP-99-1735-CMS, 2001 WL 406346 (S.D. Ind. April 13, 2001) ..................... 24

Moreno v. Nuclear Operating Co.,
   172 F. Supp. 2d 857 (S.D. Tex. 2001) ................................................................... 6

Petersen v. Dep't of Interior,
   71 M.S.P.R. 227 (1996)......................................................................................... 21

Porter v. Atchison, Topeka and Santa Fe Ry.,
   768 F.Supp. 571 (N.D. Tex. 1991) ........................................................................ 14

Reece v. Houston Lighting & Power Co.,
   79 F.3d 485 (5th Cir. 1996) ........................................................................... 6, 9, 10

Riordan v. Commonwealth Edison Co.,
   128 F.3d 549 (7th Cir. 1997) ................................................................................ 18

Rodee v. Am. Airlines,
   No. 4:03CV1193-Y, 2004 WL 2866969 (N.D. Tex. Dec. 9, 2004) .......................... 6

Roslyn v. Northwest Airlines, Inc.,
   No. 05-0441, 2005 WL 1529937 (D. Minn. June 29, 2005) .................................. 12

Schiltz v. Burlington N. R.R.,
   115 F.3d 1407 (8th Cir. 1997) ................................................................... 5, 6, 10, 11

Shabazz v. Tex. Youth Comm'n,
   300 F. Supp. 2d 467 (N.D. Tex. 2003) ............................................................. 4, 17

Shanklin v. Fernald,
   539 F.Supp.2d 878 (W.D. Tex. 2008) ..................................................................... 7

Simmons v. Willcox,
   911 F.2d 1077 (5th Cir. 1990) .............................................................................. 16

Spivey v. Robertson,
    197 F.3d 772 (5th Cir. 1999)................................................................................... 3

Steel Co. v. Citizens for a Better Environment,
    523 U.S. 83, 118 S.Ct. 1003 (1998) ........................................................................ 4

Steenken v. Campbell County,
    No. 04-224-DLB, 2007 WL 837173 (E.D. Ky. Mar. 15, 2007) ................................ 22

Swartz v. KPMG LLP,
    476 F.3d 756 (9th Cir. 2007)................................................................................... 7

Tice v. Am. Airlines,
    288 F.3d 313 (7th Cir. 2002)................................................................................... 6

Union Pac. R.R. v. Sheehan,
    439 U.S. 89 (1978) .............................................................................................. 4, 5

Vander Wal v. Sykes Enterprises, Inc.,
    377 F.Supp.2d 738 (D.N.D. 2005) ......................................................................... 21

Velasquez v. Frapwell,
    160 F.3d 389 (7th Cir. 1998)................................................................................. 21

Vickers v. City of Memphis,
    368 F.Supp.2d 842 (W.D. Tenn. 2005) ................................................................. 22

Voigt v. County of Victoria,
    No. V-07-cv-101, 2008 WL 2474575 (S.D. Tex. June 13, 2008) ............................... 7

Williamson v. Tucker,
    645 F.2d 404 (5th Cir. 1981).................................................................................... 7

Woodall v. Am. Airlines, Inc.,
    No. 3:06-cv-0072-M, 2006 WL 2914135 (N.D. Tex. Oct. 6, 2006) ......................... 12

**STATUTES**

29 U.S.C.
    § 623 ................................................................................................................... 19
    § 1001 ................................................................................................................. 16
    § 1002 ................................................................................................................. 15
    § 1003 ................................................................................................................. 15
    § 1132 ............................................................................................................ 17, 18
    § 1133 ................................................................................................................. 16

38 U.S.C.
  § 4303 ................................................................................................ 20, 23
  § 4311 ..................................................................................................... 20

42 U.S.C. § 12112 ...................................................................................... 19

45 U.S.C. § 181 ............................................................................................. 4


**OTHER AUTHORITIES**

20 C.F.R. Part 1002 .................................................................................... 19

20 C.F.R. § 1002.5 ...................................................................................... 18

29 C.F.R. § 2560.503-1 .............................................................................. 16

FED. R. CIV. P. 8 ............................................................................................ 3

FED. R. CIV. P. 12 ................................................................................... passim

FED. R. CIV. P. 19 ...................................................................................... 18

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DEREK CARDER, an individual,
MARK BOLLETER, an individual,
DREW DAUGHERTY, an individual, and
ANDREW KISSINGER, an individual, on
behalf of themselves and all others similarly
situated,                                            Case No. 4:09-cv-03173

     Plaintiffs,

v.

CONTINENTAL AIRLINES, INC., et al.,

     Defendants.

## DEFENDANT'S MOTION TO DISMISS

Defendant Continental Airlines, Inc. ("Continental") moves under Rule 12 of the Federal Rules of Civil Procedure to dismiss three of the four causes of action asserted by Plaintiffs in their Original Complaint.

## NATURE & STAGE OF THE PROCEEDINGS

Plaintiffs filed this lawsuit in the United States District Court for the Southern District of California on July 2, 2009. On September 28, 2009, that court granted Continental's motion to transfer the case to the United States District Court for the Southern District of Texas.

As noted in Plaintiffs' Original Complaint, "Continental is an air carrier engaged in the business of transporting passengers nationally and internationally." (Complaint at ¶ 8.) Pilots employed by Continental are subject to a collective bargaining agreement ("CBA") between Continental and the Airline Pilots Association ("ALPA"). (Id. at ¶¶ 15-17, 19-20, 28-29, 31.) Plaintiffs have asserted four causes of action under the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 et. seq. ("USERRA"), alleging that Continental violated USERRA:

(1) through its application of the preferential bidding system ("PBS"), which Continental implemented pursuant to the terms of the CBA (id. at ¶¶ 132-39);

(2) by allegedly underpaying its contributions to pilots' accounts in the defined contribution retirement plan ("the B-Plan") that Continental maintains pursuant to the terms of the CBA (id. at ¶¶ 140-49);

(3) by allegedly creating a hostile work environment (id. at ¶¶ 150-57); and

(4) by allegedly refusing to hire pilot applicants because of their military obligations (id. at ¶¶ 158-65).

## STATEMENT OF THE ISSUES

(1) Is Plaintiffs' first cause of action precluded by the Railway Labor Act so as to deprive the Court of subject matter jurisdiction?

(2) Is Plaintiffs' second cause of action precluded by the Railway Labor Act so as to deprive the Court of subject matter jurisdiction?

(3) In the alternative, must Plaintiffs' second cause of action be dismissed due to failure to exhaust administrative remedies and/or failure to join a necessary party?

(4) Must Plaintiffs' "hostile work environment" claim be dismissed because USERRA does not permit such a cause of action?

(5) In the alternative, must Plaintiffs' "hostile work environment" claim be dismissed because Plaintiffs have not pleaded sufficient allegations to survive a motion to dismiss for failure to state a claim upon which relief can be granted?

## SUMMARY OF THE ARGUMENT

The Court lacks subject matter jurisdiction over Plaintiffs' first and second causes of action and must dismiss those claims under Rule 12(b)(1) because they are precluded by the mandatory arbitration provision of the Railway Labor Act ("RLA").  Because the B-Plan is a plan governed by the Employee Retirement Income Security Act ("ERISA"), Plaintiffs' second cause of action must be dismissed under Rule 12(b)(1) or 12(b)(6) for the additional reason that Plaintiffs have failed to exhaust their administrative remedies under the B-Plan.  Even if Plaintiffs' second cause of action were not barred by the RLA's mandatory arbitration provision and by virtue of Plaintiffs' failure to exhaust administrative remedies under the B-Plan, Plaintiffs' second cause of action should nevertheless be dismissed under Rule 12(b)(7) because Plaintiffs failed to name the B-Plan as a party

to this action.  Plaintiffs' third cause of action must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted because USERRA does not support a cause of action for hostile work environment and, even if such a cause of action could be asserted, Plaintiffs have failed to allege facts sufficiently severe or pervasive to support such a claim.

The first three named Plaintiffs are current employees of Continental. They are asserting the first three causes of action. The fourth named plaintiff, Andrew Kissinger, is a former applicant for employment with Continental. He is asserting only the fourth cause of action.  Thus, if the Court grants Continental's motion in its entirety and dismisses the first three causes of action, it also must dismiss the first three named Plaintiffs from this case, at which point only the failure-to-hire allegations of Plaintiff Kissinger and the proposed Applicant Subclass remain.

## STANDARD OF REVIEW

Rule 12 of the Federal Rules of Civil Procedure allows a court to eliminate actions that are fatally flawed in their legal premises and destined to fail, thus sparing the litigants the burdens of unnecessary pretrial and trial activity.  Spivey v. Robertson, 197 F.3d 772, 774 (5th Cir. 1999).  To withstand a motion to dismiss under Rule 12, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The pleading standard in Rule 8(a)(2) of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

In ruling on a motion to dismiss, a court should consider only those facts stated on the face of the complaint or incorporated into the complaint by reference, and matters of which judicial notice may be taken.  Lovelace v. Software Spectrum, 78 F.3d 1015, 1017 (5th Cir. 1996).  If a complaint omits

facts concerning pivotal elements of a plaintiff's claim, a court is justified in assuming the non-existence of those facts.   Ledesma v. Dillard Dept. Stores, 818 F. Supp. 983, 984 (N.D. Tex. 1993). "[C]onclusory allegations or legal conclusions set forth as factual allegations will not prevent dismissal." Shabazz v. Tex. Youth Comm'n, 300 F. Supp. 2d 467, 470 (N.D. Tex. 2003).

### ARGUMENTS & AUTHORITIES

**A.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' FIRST AND SECOND CAUSES OF ACTION BECAUSE THEY ARE PRECLUDED BY THE RAILWAY LABOR ACT.**

Subject matter jurisdiction is the power of a court to hear and issue rulings on the merits of a dispute.  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94, 118 S.Ct. 1003, 1012 (1998).  The burden of establishing subject matter jurisdiction rests on the party asserting jurisdiction.  Boudreau v. U.S., 53 F.3d 81, 82 (5th Cir. 1995) (holding that plaintiff has burden of demonstrating jurisdiction in response to a Rule 12(b)(1) motion). Plaintiffs cannot carry their burden of establishing subject matter jurisdiction over their first two causes of action because those claims are precluded by the RLA.

As a passenger air carrier (Complaint at ¶ 8), Continental's labor and employment practices are governed by the RLA.  See 45 U.S.C. § 181.  Congress passed the RLA to provide a comprehensive and exclusive framework for resolving labor disputes in the vital transportation industry.  Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994). To realize this goal, Congress established a mandatory arbitration mechanism to ensure the "prompt and orderly settlement" of labor disputes.  Id. (quoting 45 U.S.C. § 151(a)); see also Union Pac. R.R. v. Sheehan, 439 U.S. 89, 94 (1978) ("The Adjustment Board was created as a tribunal consisting of workers and management to secure the prompt, orderly and final settlement of grievances that arise

daily between employees and carriers regarding rates of pay, rules and working conditions.").
Congress deemed it essential to the maintenance of labor peace to keep certain disputes "within the
Adjustment Board and out of the courts." Sheehan, 439 U.S. at 94. The adjustment board has
**mandatory, exclusive, and comprehensive jurisdiction** over disputes arising from the
interpretation or application of a collective bargaining agreement. Hastings v. Wilson, 516 F.3d
1055, 1059 (8th Cir. 2008); see also Burlington N. & Santa Fe Ry. v. United Transp. Union, No. 08-
11149, 2009 WL 2029821, at *1 (5th Cir. July 13, 2009) ("A minor dispute is 'subject to
compulsory and binding arbitration before the National Railroad Adjustment Board' which has
'exclusive jurisdiction over minor disputes.'") (quoting Bhd. of Ry. Carmen v. Atchison, Topeka &
Santa Fe Ry., 894 F.2d 1463, 1467 (5th Cir.1990)); Jenisio v. Ozark Airlines Inc. Ret. Plan for
Agent & Clerical Employees, 187 F.3d 970, 973 (8th Cir. 1999). Accordingly, even if a claim "is
grounded upon rights which stem from source other than the CBA (such as state law)," federal
courts lack jurisdiction over the claim "if it cannot be adjudicated without interpreting the CBA, or
if it can 'conclusively resolved' by interpreting the CBA." Brown v. Ill. Cent. R.R., 254 F.3d 654,
664-66 (7th Cir. 2001).

Courts addressing issues of RLA preclusion divide claims into two categories: "major
disputes" and "minor disputes." "Major disputes" involve the formation of collective bargaining
agreements. See Norris, 512 U.S. at 252. "Minor disputes" are disputes arising from the
interpretation or application of a collective bargaining agreement. Id. The RLA "requires parties to
arbitrate all 'minor disputes' before an adjustment board, which Congress authorized to settle labor-
management disputes regarding collective bargaining agreements in the airline industry." Hastings,
516 F.3d at 1059. "'[T]here is a presumption that disputes are minor and thus arbitrable.'" Id. An
employer covered by the RLA bears the "'relatively light burden' of establishing the exclusive arbitral
jurisdiction . . . under the RLA." Schiltz v. Burlington N. R.R., 115 F.3d 1407, 1414 (8th Cir. 1997).

Plaintiffs' first and second causes of action must be dismissed under Rule 12(b)(1) because they are minor disputes that must be arbitrated under the RLA.

**1.    Plaintiffs' First Cause of Action Is Precluded by the RLA's Mandatory Arbitration Provision, Thereby Depriving This Court of Jurisdiction.**

Courts have uniformly held that claims under federal discrimination statutes are minor disputes when they depend on interpretation of an applicable collective bargaining agreement. See, e.g., Tice v. Am. Airlines, 288 F.3d 313 (7th Cir. 2002) (affirming district court's ruling that it lacked subject matter jurisdiction over pilots' Age Discrimination in Employment Act ("ADEA") claims, since potentially dispositive issue of age-disqualified pilots' right to bump incumbent flight officers depended on interpretation of CBA's terms); Brown, 254 F.3d at 664-66 (holding that RLA precluded railroad employee from bringing Americans with Disabilities Act ("ADA") claim in federal court where resolution of ADA accommodation issue depended on interpretation of seniority provisions of CBA); Schiltz, 115 F.3d at 1414 (holding that age discrimination dispute over seniority rights was subject to arbitration under RLA because "issue of where Schiltz could assert his seniority rights had to be determined by the CBA's language"); Rodee v. Am. Airlines, No. 4:03CV1193-Y, 2004 WL 2866969 (N.D. Tex. Dec. 9, 2004) (ruling that ADEA claim was precluded by the RLA where plaintiff's claim required interpretation of the CBA); Bell v. Atchison, Topeka & Santa Fe Ry., 751 F. Supp. 667 (E.D. Tex. 1990) (holding that age discrimination claims were subject exclusively to resolution by arbitration under RLA, where the claim could not be resolved without interpreting the collective bargaining agreement).[1]

In Brown v. Illinois Central Railroad Company, the Seventh Circuit affirmed the district

---

[1] See also Miller v. Am. Airlines, Inc., 525 F.3d 520 (7th Cir. 2008) (affirming arbitrator's findings on age discrimination claim, where district court initially found that the plaintiffs' claim was a minor dispute under the RLA because the claim was dependent on the phrase "normal flight engineer retirement date" as defined by the CBA); Reece v. Houston Lighting & Power Co., 79 F.3d 485, 487 (5th Cir. 1996) (holding that Labor Management Relations Act ("LMRA") preempts discrimination claims where the claim "turns on questions of promotion, seniority, and assignment to training programs, all of which are provided for in the CBA"); Moreno v. Nuclear Operating Co., 172 F. Supp. 2d 857 (S.D. Tex. 2001) (holding that national origin discrimination claim was preempted by LMRA where employee's claim directly related to employer's duties under CBA and employer's defense would require interpretation of employer's duties under CBA).

court's decision that the RLA precluded plaintiff from raising his ADA claim in federal court. In

Brown, a railroad employee with schizoaffective disorder asked the railroad to accommodate his

disability under the ADA by allowing him to work five days a week rather than seven days a week.

254 F.3d at 657. The railroad did not grant the accommodation request and medically disqualified

him from employment. Id. The plaintiff sued the railroad under the ADA, alleging that the railroad

discriminated against him by denying his accommodation request and disqualifying him from work.

Id. The district court granted the railroad's motion to dismiss, finding that the plaintiff's claim was

a minor dispute that had to be arbitrated under the RLA. Id. at 658. The Seventh Circuit affirmed

the decision, stating in relevant part:

> [A]llowing Brown to lay off in the manner that he requests without first offering the
> same layoff privileges to more senior trainmen might very well violate the seniority
> system established by the CBA. . . . Moreover, and most important for our purposes,
> the determination of whether or not Brown's requested accommodation would violate
> the seniority provisions of the CBA will potentially be dispositive of Brown's ADA
> claim . . . . Therefore, the adjudication of Brown's ADA claim cannot go forward until
> Article 55 and the seniority provisions of the CBA are interpreted, and the court's
> interpretation of those provisions could conclusively resolve Brown's claim, making it
> a 'minor dispute' under the RLA.

Id. at 661.

Plaintiffs' first cause of action clearly is based on a claim for benefits under the CBA, which

necessarily requires interpretation of the CBA.[2] In their Original Complaint, Plaintiffs allege that

---

[2] Relevant excerpts of the CBA are attached to this motion as Exhibit A. In resolving a motion to dismiss under Rule
12(b)(1), the Court is not restricted to the face of the pleadings, but may review any evidence necessary to determine
whether jurisdiction exists. Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981). Additionally, "[i]n considering a
Rule 12(b)(6) motion, the district court may consider 'an undisputably authentic document that a defendant attaches as an
exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" Brock v. Baskin-Robbins USA Co.,
113 F.Supp.2d 1078, 1092 (E.D. Tex. 2000) (quoting Steinhardt Group, Inc. v. Citicorp, 126 F.3d 144 (3d Cir. 1997));
accord Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007) ("[A] court may consider a writing referenced in a
complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is
unquestioned"); Voigt v. County of Victoria, No. V-07-cv-101, 2008 WL 2474575 at *1 (S.D. Tex. June 13, 2008) ("[A]
court does not transform a motion to dismiss into one for summary judgment by considering documents attached to a
defendant's motion to dismiss that are central to the plaintiff's claim but were left out of the complaint."); Shanklin v.
Fernald, 539 F.Supp.2d 878, 883 (W.D. Tex. 2008). As discussed in more detail below, it is necessary for the Court to
review excerpts of the CBA to determine whether jurisdiction exists over Plaintiffs' first and second causes of action.
Additionally, Plaintiffs' first and second causes of action are based on the CBA. This Court, therefore, may consider
excerpts of the CBA in deciding this motion to dismiss. See Tucker, 645 F.2d at 413; Brock, 113 F.Supp.2d at 1092.

the PBS was implemented "[p]ursuant to the Collective Bargaining Agreement between Continental and the ALPA." (Complaint at ¶ 17; see also Ex. A.)  In stating the factual allegations underlying their first cause of action, Plaintiffs quote the CBA and argue that Continental's application of Section 25 of the CBA violates USERRA because it allegedly deprives them of benefits of employment provided to other employees under the CBA. (Id. at ¶¶ 17-26.)  Specifically, Plaintiffs allege that uniformed servicemembers are awarded trip assignments "that are far inferior, lower in quality and/or contain fewer hours and thus less pay than their seniority allows them to hold," and that the "resulting line of trips is therefore not in accordance with each pilot's seniority had these pilots not had military obligations." (Id. at ¶¶ 23, 25.)  Thus, determining the merits of Plaintiffs' claim will necessarily turn on interpretation of the CBA to determine (1) how trip lines are assigned and modified, and (2) the benefits of employment (i.e., trip assignments) to which non-servicemembers with similar seniority are entitled under the CBA.  On the face of the Original Complaint, Plaintiffs' first cause of action requires interpretation of the terms of the CBA.  It is therefore a minor dispute.  The arbitration provision of the RLA precludes litigation of this claim in court.

The most recent Fifth Circuit opinion on RLA preclusion of discrimination claims, Carmona v. Southwest Airlines, illustrates "the distinction between reference to the CBA and reliance on it," i.e., the distinction between cases that are not precluded because they merely involve reference to the CBA, and cases like this one that must be arbitrated because their resolution turns on matters provided in the CBA. 536 F.3d 344, 349 (5th Cir. 2008).  Although the Fifth Circuit ruled against the airline in Carmona, the Court's reasoning supports dismissal for lack of subject matter jurisdiction under the facts of this case. In Carmona, a male flight attendant sued under Title VII and the ADA after his employment was terminated for excessive absenteeism. The plaintiff alleged "that Southwest did not assess negative attendance points under similar circumstances when flight attendants (1) were female, (2) were not

disabled, or (3) had not requested intermittent FMLA leave . . . ." Id. at 348.  The Fifth Circuit reversed the district court's ruling that Carmona's claims were minor disputes under the RLA, finding that the CBA was "relevant to, but not dispositive of, the resolution of Carmona's claims . . . ." Id. at 349. "Even though a court would have to *refer* to the CBA to consider fully each of the alleged acts of disparate treatment, **there is no disagreement about how to interpret these provisions of the CBA that detail Southwest's procedures for assessing attendance, leave, discipline, and termination.**" Id. (emphasis added).

In explaining its holding in Carmona, the Fifth Circuit cited with approval, but distinguished, Reece v. Houston Lighting & Power, 79 F.3d 485 (5th Cir. 1996). The plaintiff in Reece alleged race discrimination in that he allegedly was (1) denied promotions and training; (2) retaliated against for engaging in a protected activity; and (3) subjected to intentional infliction of emotional distress.  Id. at 486.  The district court held that the LMRA preempted the plaintiff's claims and that the plaintiff was required to exhaust his mandatory administrative remedies under the CBA.  Id.  The Fifth Circuit affirmed, concluding:

> Reece's discrimination claim **turns on questions of promotion, seniority, and assignment to training programs, all of which are provided for in the CBA**. HL & P will undoubtedly rely on the CBA as its legitimate, non-discriminatory reason for Reece's treatment. When Reece then attempts to show that HL & P's stated reason is pretextual, the CBA would have to be interpreted because Reece would have to challenge HL & P's rights under the CBA.

Id. at 487 (emphasis added).  The Fifth Circuit later cited this paragraph when it distinguished the facts in Carmona from the facts in Reece.  Carmona, 536 F.3d at 350.  Specifically, the Fifth Circuit noted: "In reaching the decision in Reece, however, we noted that the plaintiff's claim **'turn[ed] on** questions of promotion, seniority, and assignment to training programs, all of which are provided for in the CBA,' and that the plaintiff directly challenged his employer's rights under the CBA, all of which required interpretation of the CBA. . . . Carmona's claims *do not* turn on the CBA, so Reece is inapposite to Southwest's contention that the instant matter requires CBA interpretation."

Id. (emphasis added).

The present case is more similar to the facts in Reece or Brown v. Ill. Central R.R. in that Plaintiffs' claims most definitely **"turn on"** matters provided in the CBA between Continental and ALPA.  Plaintiffs directly challenge Continental's rights under the CBA with respect to trip assignments.  Plaintiffs' first cause of action is premised on the notion Continental discriminates against uniformed servicemembers on the basis of trip bidding through the PBS.  (Complaint at ¶¶ 17-27.)  The PBS is described in and maintained pursuant to the terms of the CBA.  (Id. at ¶ 17; see also Ex. A Sections 25 & 25.PBS.)  In fact, the PBS, a powerful, proprietary software tool, was jointly designed and implemented by the PBS Committee, which consisted of two company representatives and two ALPA representatives.  (Ex. A., Section 25.PBS; Letter of Agreement ("LOA") 37-1.)  That committee was tasked with not only implementing the PBS, but also monitoring PBS bidding, auditing and verifying the accuracy of bid results, determining system enhancements and reviewing line quality data.  (Ex. A, LOA 37-1.)  Issues that could not be resolved by the Committee are referred to the Vice President of Flight Operations and ALPA's MEC Chairman.  (Id. 37-2.)

Despite the union's joint design and implementation of the PBS system, Plaintiffs nonetheless allege that Continental uses the PBS to construct trip assignments **"that are far inferior, lower in quality and/or contain fewer hours and thus less pay than their seniority allows them to hold,"** and that the "resulting line of trips is therefore **not in accordance with each pilot's seniority had these pilots not had military obligations**."  (Complaint at ¶¶ 23, 25, 134-38) (emphasis added).  In this case, as in Brown and Reece, resolution of Plaintiffs' first claim turns on seniority and schedule assignments, "all of which are provided for in the CBA," and thus are subject to mandatory arbitration under the RLA.  See Brown, 254 F.3d at 657; Reece, 79 F.3d at 487; see also Schiltz, 115 F.3d at 1414 (holding that the "issue of where Schiltz could assert his seniority

rights had to be determined by the CBA's language").  Not only is the interpretation and application of Sections 25 and 25.PBS critical to understanding how pilots bid for their schedules "by submitting . . . preferences for Days Off, Trip Pairings, and other general Line qualities," (id. Section 25.PBS at 1.), expert construction and understanding of various provisions of the CBA – which are interwoven and integrated into a complex single system of pilot scheduling, leave and compensation practices, including Compensation (Section 3), Minimum Pay Guarantee (Section 4), Vacation (Section 7), Hours of Service (Section 12), Leaves of Absence (Section 13), and Seniority (Section 22) – will all be necessary to determine whether Plaintiffs' claim of discriminatory bidding can survive.

Stated differently, Plaintiffs do not allege that they were *prevented* from taking military leave, only that they were denied benefits of employment to which they allegedly would have been entitled had they not taken military leave.  (Complaint at ¶¶ 23, 25.)  The only way to determine whether Plaintiffs have been denied a benefit of employment is to interpret the CBA to determine what those benefits of employment are.  It simply is not possible to resolve Plaintiffs' USERRA claims without interpreting the CBA to determine the trip assignments that "[Plaintiffs'] seniority allows them to hold" and the line of trips that would be **"in accordance with each pilot's seniority had these pilots not had military obligations."**  (Complaint at ¶¶ 23, 25, 134-38) (emphasis added).  See Brown, 254 F.3d at 661 (affirming dismissal where ADA claim could be conclusively resolved by interpreting CBA to determine other employees' seniority rights with respect to bidding preferences).

Even assuming arguendo Plaintiffs somehow were awarded trip assignments less desirable to them because of trip pairings, days off, or the like, the Court nevertheless will have to interpret numerous provisions of the CBA to determine whether these trip assignments were the result of unlawful, discriminatory practices or the result of collectively-bargained CBA provisions

concerning pilot seniority and bidding (*inter alia*, Sections 4, 22, 25, 25.PBS).  Also, Section 25.PBS, Part 6, Subsection F of the CBA provides that all known absences (e.g., vacation, military/drill weekend, union business and leaves of absence) will be credited at two hours and forty-five minutes (2:45) per day for the purpose of line (a schedule of trips) construction, and Subsection C of that same part provides that a pilot can review in electronic form all known absences for the upcoming bid and future bid period (including military leaves and vacation).  Section 25, Part 10 outlines the opportunities pilots have to modify their schedules but in correlation with the PBS.   (Id.) Thus, even if some Plaintiffs were able to prove that they received trip assignments that were inferior, lower in quality, contain fewer hours and less pay," the Court would nevertheless have to interpret portions of the CBA to determine whether Continental's scheduling practices violate USERRA or whether the PBS would have allowed those individuals to obtain more preferable trip assignments had they entered different bidding preferences or attempted to modify their schedule.

Only one federal district court has issued a published opinion addressing RLA preclusion of USERRA claims, but it was unable to "conclusively determine whether or not" the claims before it could be resolved by interpreting the CBA based on the undeveloped record before it.[3]  Roslyn v. Northwest Airlines, Inc., No. 05-0441, 2005 WL 1529937, at *3 (D. Minn. June 29, 2005).  Unlike in the present case, the plaintiff's complaint in Roslyn did not make any reference to the collective bargaining agreement or directly challenge the employer's rights under the collective bargaining

---

[3] One other case has addressed the interaction between the RLA and USERRA, but not in the context of RLA preclusion. Woodall v. Am. Airlines, Inc., No. 3:06-cv-0072-M, 2006 WL 2914135 (N.D. Tex. Oct. 6, 2006).  Woodall did not involve a question of RLA preclusion.  Instead, the defendant in Woodall asked the court to "harmonize" the RLA and USERRA, arguing that the RLA provides that courts are not to disturb the terms of a collectively bargained labor agreement. Id. at *4; see also Brief of American Airlines in support of Motion for Dismissal, Docket Entry No. 8 at 3, n.1, No. 3:06-cv-0072M (N.D. Tex. April 12, 2006) ("In requesting the Court to harmonize the RLA and USERRA at the pleading stage, American does not argue that the RLA preempts the Court's jurisdiction.").  Unlike the defendant in Woodall, Continental is explicitly arguing that the allegations underlying Plaintiffs' first and second causes of action identify minor disputes and that the arbitration provision of the RLA precludes this Court's jurisdiction over those causes of action.

agreement.  In contrast, Plaintiffs' Original Complaint in this case  explicitly references the CBA numerous times, claiming entitlement to benefits allegedly due to them under the CBA and challenging Continental's interpretation and application of the CBA.  Plaintiffs repeatedly quote the CBA (Complaint at ¶¶ 16, 19, 28-29, 31), and challenge the PBS, a system jointly designed and implemented by the company and ALPA, as discriminatory.  However, the employment benefits Plaintiffs seek, i.e., preferential trip assignments, can only be analyzed by interpreting multiple sections of the CBA.  The only way for the Court to determine whether Plaintiffs were denied a benefit of employment is to resolve disputes over the interpretation and application of the CBA with respect to the work rules and benefits of employment that are provided to Continental pilots under the terms of the CBA.  The Court therefore lacks subject matter jurisdiction over the first cause of action and should accordingly dismiss that count under Rule 12(b)(1).

### 2.   **Plaintiffs' Second Cause of Action Is Precluded by the RLA's Mandatory Arbitration Provision, Thereby Depriving This Court of Subject Matter Jurisdiction.**

Courts routinely hold that claims for benefits under an employer-provided pension plan are precluded by the mandatory arbitration provision of the RLA when the plan is maintained pursuant to a collective bargaining agreement.  "An employee pension plan falls within the scope of the Railway Labor Act and is subject to its mandatory arbitration procedures."  Long v. Flying Tiger Line, Inc., 994 F.2d 692, 694 (9th Cir. 1993) (affirming district court's holding that it lacked subject matter jurisdiction over interpretation of summary plan description); see also Hastings v. Wilson, 516 F.3d 1055, 1059 (8th Cir. 2008) (holding that ERISA claims against air carrier constituted minor dispute within the exclusive jurisdiction of the RLA adjustment board) ("[T]he RLA's arbitration requirement applies to ERISA claims if the pension plan is (1) itself a collective bargaining agreement or (2) maintained pursuant to a collective bargaining agreement."); Bloemer v. Northwest Airlines, Inc., 401 F.3d 935 (8th Cir. 2005) (holding that claims seeking shares of

stock resulting from demutualization of group annuity contract purchased with assets from union-negotiated, employer-funded retirement plan); <u>Porter v. Atchison, Topeka and Santa Fe Ry.</u>, 768 F.Supp. 571 (N.D. Tex. 1991) (dismissing ERISA claims due to lack of subject matter jurisdiction under RLA preclusion doctrine, where plaintiffs sought protective benefits as provided in CBA).

For example, in <u>Flying Tiger Line</u>, the Ninth Circuit affirmed the district court's ruling that it lacked subject matter jurisdiction over the plaintiffs' ERISA claims, stating: "If we were to find subject matter jurisdiction over such a claim, we would eviscerate the Railway Labor Act's system of arbitrating disputes. No longer would the decision of a system adjustment board be the final word on disputes 'growing out of . . . the interpretation or application of agreements concerning rates of pay, rules, or working conditions.'"  <u>Flying Tiger Line</u>, 994 F.2d at 695 (citing 45 U.S.C. § 184). Similarly, in <u>Hastings</u>, the district court dismissed class action claims against fiduciaries of a Northwest Airlines pension plan because the court lacked subject matter jurisdiction due to the arbitration provision of the RLA.  <u>See</u> <u>Hastings</u>, 516 F.3d at 1058-60.  The court of appeals affirmed the dismissal, finding that the pension plan was maintained pursuant to a collective bargaining agreement and that the RLA adjustment board therefore had exclusive jurisdiction over the dispute. <u>Id.</u>

Similarly, in <u>Bloemer</u>, annuitants and beneficiaries of an annuity contract purchased with funds from a union-negotiated, employer-funded retirement plan sued Northwest Airlines, "alleging they – not Northwest – were entitled to the shares [obtained from demutualization of the annuity contract]."  <u>Bloemer</u>, 401 F.3d at 936-37.  The record showed that "the CBAs create and terminate the retirement plans, and address the purchase of the annuity contract."  <u>Id.</u> at 937.  The Eighth Circuit affirmed dismissal of plaintiffs' claims on the grounds that they were subject to mandatory arbitration under the RLA, finding that the claims "originate[d] in rights and duties in the CBAs, which therefore must be interpreted."  <u>Id.</u> at 939.

Under the same reasoning as in the above-referenced cases, Plaintiffs' second cause of action is precluded by the arbitration provision of the RLA.  Plaintiffs seek benefits under an ERISA plan maintained pursuant to the CBA, and resolution of their claims will turn on interpretation of provisions in the CBA.  Specifically, Plaintiffs' Original Complaint makes clear that the B-Plan is maintained "[p]ursuant to Section 28, Part 4, subsection A of the Collective Bargaining Agreement."  (Complaint at ¶ 28.)  In stating the factual allegations underlying their second cause of action, Plaintiffs quote the CBA twice.  (Id. at ¶¶ 29, 31.)  Plaintiffs' claims can only be resolved by interpreting the rights and duties assigned to the parties under the CBA.  Accordingly, Plaintiffs' second cause of action is also precluded by the arbitration requirement of the RLA and must be dismissed under Rule 12(b)(1).

**B.     PLAINTIFFS' SECOND CAUSE OF ACTION IS PRECLUDED BECAUSE PLAINTIFFS FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES AND FAILED TO NAME AN INDISPENSABLE PARTY.**

**1.     The B-Plan Is an ERISA Plan.**

ERISA "shall apply to any employee benefit plan" established or maintained by an employer engaged in commerce.  29 U.S.C. § 1003.  "The term 'employee benefit plan' or 'plan' means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan."  29 U.S.C. § 1002 (3). ERISA defines the terms "employee pension benefit plan" and "pension plan" to mean "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program – (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond . . . ."  29 U.S.C. § 1002 (2)(A).

In this case, Plaintiffs cannot dispute that the B-Plan is a pension plan governed by ERISA.

The B-Plan is "established or maintained by an employer" and "provides retirement income to employees."[4]  In fact, Article 7.3 of the B-Plan specifically states that the B-Plan is "Covered by Section 404(c) of ERISA."  See Ex. B at 15.  In conclusion, the B-Plan is a pension plan and therefore is governed by ERISA.

### 2.      Plaintiffs Have Failed to Exhaust Their Remedies under the B-Plan.

ERISA was enacted to protect the interests of participants in employee benefit plans and their beneficiaries by, among other things, "establishing standards of conduct, responsibility, and obligation for fiduciaries of employment benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts."  29 U.S.C. § 1001(b).  ERISA mandates that every employee benefit plan must establish an internal procedure by which participants can obtain further review of a denial of their claims.  29 U.S.C. §1133(2).  The Department of Labor's implementing regulations contain a similar requirement.  29 C.F.R. §2560.503-1(g).  As a result, it is well established that participants in employee benefit funds have an obligation to exhaust their administrative remedies before pursuing any legal remedies. See Crowell v. Shell Oil Co., 541 F.3d 295, 308 (5th Cir. 2008) ("This court requires that claimants seeking benefits from an ERISA plan . . . first exhaust available administrative remedies under the plan before bringing suit to recover benefits.") (quoting Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps., 215 F.3d 475, 479 (5th Cir. 2000)).[5]

Although Plaintiffs' second cause of action alleges a USERRA violation, Plaintiffs

---

[4] A copy of the B-Plan is attached as Exhibit B.  It is necessary for the Court to review portions of the B-Plan to determine whether jurisdiction exists over Plaintiffs' second cause of action.  Additionally, Plaintiffs' second cause of action is based entirely on the terms and application of the B-Plan, which Plaintiffs reference numerous times in their Original Complaint. This Court, therefore, may consider the provisions of the B-Plan in deciding this motion to dismiss.  See Eret v. Continental Holding, Inc., 838 F.Supp. 358, 362-63 (N.D. Ill. 1993) (holding that pension plan that is "undeniably at the core" of plaintiff's cause of action may be considered in a Rule 12(b)(6) setting even though submitted to the court by the defendant, rather than the plaintiff).

[5] Accord Simmons v. Willcox, 911 F.2d 1077 (5th Cir. 1990); Denton v. First Nat'l Bank of Waco, 765 F.2d 1295, 1300 (5th Cir. 1985); see also Gallegos v. Mt. Sinai Med. Ctr., 210 F.3d 803, 808 (7th Cir.), cert. denied, 531 U.S. 827 (2000); CWA v. AT&T Co., 40 F.3d 426, 431-32 (D.C. Cir. 1999); Kinkead v. Sw. Bell Corp., 111 F.3d 67, 68 (8th Cir. 1997); Makar v. Health Care Corp., 872 F.2d 80 (4th Cir. 1989); Amato v. Bernard, 618 F.2d 559 (9th Cir. 1980).

nonetheless are claiming an entitlement to benefits under an ERISA plan and accusing Continental of underpaying contributions to an ERISA plan.  "[W]hen beneficiaries seek to recover benefits from a plan covered by ERISA, their exclusive remedy is provided by ERISA, in 29 U.S.C. § 1132 (a)(1)(B)."  Hansen v. Cont'l Ins. Co., 940 F.2d 971, 979 (5th Cir. 1991).  Plaintiffs are thus barred under ERISA from seeking relief in court unless they have exhausted their remedies under the B-Plan.  The claims procedure for the B-Plan is defined in Article XIII of the B-Plan.  See Ex. B at 25-29.  Section 13.7, entitled "Exhaustion of Administrative Remedies," specifically states: "Completion of the claims procedures described in this Article will be a condition precedent to the commencement of any legal or equitable action in connection with a claim for Plan benefits by a Claimant or by any other person or entity claiming rights individually or through a Claimant . . . ."  Id. at 29.  Despite this clause and the well-settled principle that exhaustion of administrative remedies is a prerequisite to seeking relief under an ERISA plan in court, Plaintiffs do not allege in their Original Complaint that they have exhausted their administrative remedies under the B-Plan.  As noted by another district court in Texas, "conclusory allegations or legal conclusions set forth as factual allegations will not prevent dismissal."  Shabazz, 300 F. Supp. 2d at 470.  In this case, Plaintiffs have not even pleaded a conclusory allegation that they exhausted their remedies, nor can they dispute that they have failed to do so.  Because Plaintiffs have failed to exhaust their administrative remedies under the B-Plan, dismissal of Plaintiffs' second cause of action is mandatory.

### 3.    Plaintiffs Have Failed to Join the Plan as a Party Required under Rule 19.

Under Rule 12(b)(7) of the Federal Rules of Civil Procedure, the Court may dismiss a case for "failure to join a party under Rule 19."  FED. R. CIV. P. 12(b)(7).  Under Rule 19, a person who is subject to service of process and whose joinder will not defeat subject matter jurisdiction must be joined as a party if:

> (A) in that person's absence, the court cannot accord complete relief among existing
>       parties; or

(B) that person claims an interest relating to the subject of the action and is so situated
that disposing of the action in the person's absence may:
(i) as a practical matter impair or impede the person's ability to protect the
interest; or
(ii) leave an existing party subject to a substantial risk of incurring double,
multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a).

ERISA plans are separate legal entities that can sue or be sued.[6]  29 U.S.C. § 1132(d)(1).

The ERISA plan is a required party in any case seeking benefits from the plan.  See, e.g., Int'l

Union v. Auto Glass Employees Fed. Credit Union, 858 F.Supp. 711, 723 (M.D. Tenn. 1994) ("The

proper defendants are the employee benefit plan itself and the trustees who administer the

plan . . . .").  "ERISA permits suits to recover benefits only against the plan as an entity . . . ."

Riordan v. Commonwealth Edison Co., 128 F.3d 549, 551 (7th Cir. 1997); accord Gadberry v.

Bethesda, Inc., 608 F.Supp.2d 916, 920 (S.D. Ohio 2009) ("ERISA establishes clearly that a plan is

a separate legal entity subject to suit, and that any judgment rendered in an action for benefits under

§ 1132(a)(1)(B) is enforceable only against the plan").  Plaintiffs have failed to name the B-Plan as

a defendant in this case, and the Court should accordingly dismiss Plaintiffs' second cause of action

under Rule 12(b)(7) for this additional reason.

**C.**     **PLAINTIFFS' THIRD CAUSE OF ACTION ALLEGING A "HOSTILE WORK
ENVIRONMENT" IS NOT A COGNIZABLE CLAIM UNDER USERRA.**

**1.**     **USERRA Does Not Create Liability for a Hostile Work Environment.**

Plaintiffs allege that Continental "violated Section 4311 of USERRA by creating a hostile

work environment through harassing, discriminatory, and degrading comments and conduct . . . ."

(Complaint at ¶ 152.)  These allegations do not constitute a cognizable claim on which relief may be

granted under USERRA, which does not provide for a hostile work environment cause of action.

Neither the Supreme Court nor any federal court of appeals has ever interpreted USERRA to create

---

[6] The regulations interpreting USERRA also provide that an "employee pension benefit plan as described in section 3(2) of
[ERISA] is considered an employer for an individual that it does not actually employ only with respect to the obligation to
provide pension benefits."  20 C.F.R. § 1002.5(d)(3).

liability for a hostile work environment.  Also, no district court in the Fifth Circuit has ever reached such an interpretation, and this Court should decline to be the first.

The text of USERRA does not include any mention of the words harass, harassment, or hostile.  See generally 38 U.S.C. §§ 4301 et seq.  The interpretative regulations under USERRA provide extensive guidance on protection from employer discrimination and retaliation, reemployment, health plan coverage, seniority rights and benefits, and pension plans and benefits, but those regulations also lack any mention of the words harass, harassment, or hostile.  See generally 20 C.F.R. Part 1002.  Neither the text of the statute nor the regulations provide any reason to believe that hostile work environment claims are cognizable under USERRA.

The rationale that supports hostile work environment claims in other federal discrimination statutes does not apply to USERRA, which has completely different language than other federal discrimination statutes.  The Supreme Court first held in Meritor Savings Bank v. Vinson that an individual may establish a violation of Title VII of the Civil Rights Act of 1964 by establishing that discrimination based on sex has created hostile or abusive work environment.  477 U.S. 57, 64-66 (1986).  The Court gave two reasons for this holding.  One reason was that EEOC Guidelines supported this view.[7]  Id. at 65.  The other reason was based on the language of Title VII itself, which prohibits employers from discriminating against employees **"with respect to his compensation, terms, conditions, or privileges of employment."**  Id. at 64.  The Supreme Court held: "The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment."  Id.  The ADEA and ADA, which both permit hostile work environment claims, also use the phrase "terms, conditions, or privileges of employment."  29 U.S.C. § 623; 42 U.S.C. § 12112.

USERRA, on the other hand, does not mention the phrase "terms, conditions, or privileges,"

---

[7] As noted above, the regulations governing USERRA lack any mention of hostile work environment claims.

nor anything to that effect.  See generally 38 U.S.C. §§ 4301 et seq.  Instead, USERRA provides that individuals protected by the statute "shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation."  38 U.S.C. § 4311(a).  USERRA defines a "benefit of employment" as "any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment."  38 U.S.C. § 4303(2).

Notably absent from the definition of "benefit of employment" is any reference to "freedom from hostility," "freedom from harassment," or "freedom from derogatory comments regarding. . . military service and military leave obligations" (see Complaint at ¶153).  Moreover, "freedom from harassment" is not a right or benefit "under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment."  Thus, by the unambiguous language of the statute itself, USERRA provides no legal basis for Plaintiffs' hostile work environment claim.  If Congress intended to provide protection from harassment to members of the uniformed services, it would have explicitly included such a provision in the statute or, at the very least, would have phrased the statute with respect to "terms, conditions, or privileges of employment" rather than "benefits of employment."

Additionally, the legislative history behind USERRA and its predecessor statute do not support a hostile work environment claim.  Congress did not enact USERRA "to combat an

ignorant or vicious stereotyping of reservists as undependable employees" but "to encourage people to join [the armed services]".  Velasquez v. Frapwell, 160 F.3d 389, 392 (7th Cir. 1998) (citing Monroe v. Standard Oil Co., 452 U.S. 549 (1981)), vacated in part on other grounds, 165 F.3d 593 (1999)).  The legislative history of USERRA and its predecessor statute leave no reason to believe that Congress contemplated hostile work environment claims when enacting the statute.  Also, USERRA "does not allow for the recovery of damages for mental anguish, pain or suffering, nor does USERRA allow for the recovery of punitive damages," which is also indicative that Congress did not intend to permit hostile work environment claims under USERRA.  Vander Wal v. Sykes Enterprises, Inc., 377 F.Supp.2d 738, 746 (D.N.D. 2005) (citing Barreto v. ITT World Directories, Inc., 62 F.Supp.2d 387, 395-96 (D.P.R. 1999)).

Although the Merit Systems Protection Board has concluded that harassment based on prior military service violates USERRA, Petersen v. Dep't of Interior, 71 M.S.P.R. 227 (1996), decisions of the M.S.P.B. are not binding on this Court.  See Church v. City of Reno, No. 97-17097, 168 F.3d 498, 1999 WL 65205 at *1, n.3 (9th Cir. Feb. 9, 1999).  In addressing whether USERRA creates liability for a hostile work environment claim in Church v. City of Reno, the Ninth Circuit stated: "We recognize that the Merits Systems Protection Board has interpreted the USERRA to create liability for a hostile work environment.  The M.S.P.B.'s interpretation of the USERRA is not, however, binding on the City."  Id. (citing Petersen).  In any event, the M.P.S.B.'s decision in Petersen is fundamentally flawed in that its conclusion was based on what, by the M.P.S.B.'s own admission, was an "expansive interpretation" of the statute, which it reached by adopting case law from other federal statutes with completely different language.  See Peterson, 71 M.S.P.R. at 236-38.  As the Supreme Court recently noted in Gross v. FBL Financial Services: "When conducting statutory interpretation, we 'must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination.'"  129 S.Ct. 2343, 2349 (2009).  Careful

and critical examination of USERRA reveals that its provisions do not support hostile work environment claims.

Only four district courts have found that a hostile work environment cause of action exists under USERRA.  Three of those opinions relied blindly on the M.P.S.B.'s reasoning in <u>Petersen</u>, noting the scarcity of federal case law addressing the issue.  <u>See</u> <u>Dees v. Hyundai Motor Mfg. Alabama, LLC</u>, 605 F. Supp. 2d 1220, 1226-28 (M.D. Ala. 2009) (following <u>Petersen</u>'s holding that harassment claims are cognizable under USERRA, but dismissing claim due to lack of standing on grounds that plaintiff could not recover damages or injunctive relief); <u>Maher v. City of Chicago</u>, 406 F. Supp. 2d 1006, 1023 (N.D. Ill. 2006); <u>Vickers v. City of Memphis</u>, 368 F.Supp.2d 842, 844 (W.D. Tenn. 2005).  As noted above, the M.P.S.B.'s interpretation of USERRA is entitled to no weight by this Court, both because it is an administrative opinion that is not binding on this Court and because its "expansive interpretation" of the statute is fundamentally flawed.  Similarly, the Court should disregard these district court opinions that rely on <u>Petersen</u>.

In the fourth opinion finding a hostile work environment under USERRA, the court reached its conclusion based on its holding that "the right to be free from a hostile work environment, broadly construed, is a benefit of employment . . . ."  <u>Steenken v. Campbell County</u>, No. 04-224-DLB, 2007 WL 837173, at *3 (E.D. Ky. Mar. 15, 2007).  This inclusion of "the right to be free from a hostile work environment" within the statutorily defined phrase "benefit of employment" is not a valid interpretation of USERRA.  Interpreting whether the phrase "benefit of employment" includes freedom from a hostile work environment "calls for the application of the maxim <u>ejusdem generis</u>, the statutory canon that '[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.'"  <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 114 (2001).  As noted above, USERRA defines a "benefit of employment" as "any advantage, profit, privilege, gain,

status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment." 38 U.S.C. § 4303(2). "Freedom from a hostile work environment" is not even remotely "similar in nature to those objects enumerated by the preceding specific words" in USERRA's definition of "benefit of employment". See Adams, 532 U.S. at 114. Accordingly, the Court should disregard the court's holding in Steenken.

The text of USERRA does not create a cause of action for harassment or a hostile work environment. More importantly, the Supreme Court's rationale for permitting hostile work environment claims under other federal discrimination statutes does not apply to claims under USERRA, which does not include the language from which the Court inferred Congress's intent to permit hostile work environment claims in connection with other federal discrimination lawsuits. The Supreme Court has advised that "employees and their counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination." Fed. Express Corp. v. Holowecki, 552 U.S. ___, 128 S.Ct. 1147, 1153 (2008). Careful and critical examination of USERRA reveals that its provisions do not support hostile work environment claims. This Court should therefore dismiss Plaintiffs' third cause of action.

## 2. Regardless of Whether USERRA Permits Hostile Work Environment Claims, Plaintiffs' Allegations Fall Short of Establishing Such a Claim.

Even if the Court were to assume without deciding that USERRA permits a hostile work environment cause of action, which it does not, Plaintiffs' claim would nevertheless fail. Two federal district courts have taken this route, choosing to defer ruling on the question of whether USERRA permits a hostile work environment claim but nevertheless dismissing the USERRA harassment allegations because they were not sufficiently severe or pervasive to establish a hostile

work environment.[8]  See Figueroa Reyes v. Hospital San Pablo del Este, 389 F.Supp.2d 205, 212 (D.P.R. 2005); Miller v. City of Indianapolis, No. IP-99-1735-CMS, 2001 WL 406346 (S.D. Ind. April 13, 2001).  For example, in Miller, some plaintiffs alleged hostile work environment claims under USERRA, claiming that their supervisors had made negative comments about their military status and had pressured employees to leave the military.  Id. at *2, 8.  In granting summary judgment against the hostile work environment claims, the Court noted that "neither party has directed the Court to authority that a claim for hostile work environment exists under USERRA." Id. at *8.  However, the Court ruled that, even if it were to assume that such a cause of action existed under USERRA, the plaintiffs' allegations of isolated comments and pressure to leave the military were not sufficiently severe or pervasive to alter the conditions of plaintiffs' employment and thereby create an abusive working environment.  Id.  The court accordingly granted the defendant's motion for summary judgment, and the Seventh Circuit affirmed.  Miller v. City of Indianapolis, 281 F.3d 648 (7th Cir. 2002).

In ruling on a hostile work environment claim, courts consider the frequency of the alleged discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the employee's work performance. Harris, 510 U.S. at 23.  Courts view these circumstances from an objective perspective to determine whether a reasonable person would perceive the situation as hostile.  Id. at 21-22.  To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  To satisfy this burden, Plaintiffs must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 129 S.Ct. at

---

[8] Under Title VII of the Civil Rights Act, the ADEA, or the ADA, to prevail on a hostile work environment claim, an employee must show that the employer's conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 371 (1993); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986).  Assuming without deciding that USERRA might permit a hostile work environment claim, the courts in Figueroa and Miller applied this standard in ruling that the plaintiffs' claims were without merit.

1949 (citing <u>Twombly</u>, 550 U.S. at 555).

In this case, Plaintiffs' Original Complaint alleges that some Continental employees made negative comments about military leave. (<u>See</u> Complaint at ¶ 54.) These comments are not sufficiently severe or pervasive to alter the conditions of plaintiffs' employment and thereby create an abusive working environment, whether considered individually or together. They are neither severe, nor physically threatening or humiliating, nor could they have interfered with any reasonable employee's work performance. Plaintiffs' allegations of "[h]arassing acts by Continental" – such as "[c]hastising members of the class for taking 'short notice' military leave," asking questions about military leave, or requiring employees to submit orders for military leave before granting the leave request (<u>id.</u> at ¶ 55) – are also insufficient to establish that Plaintiffs were in an objectively hostile work environment. The allegations in this case are no more severe than those in <u>Miller</u>, in which the court rejected Plaintiffs' hostile work environment claims. Thus, even if this Court decides not to rule on the question of whether USERRA permits hostile work environment claims, dismissal of Plaintiffs' hostile work environment claim is warranted because Plaintiffs' Original Complaint fails to state sufficient facts to establish such a cause of action.

## CONCLUSION

Plaintiffs' first and second causes of action are precluded by the Railway Labor Act. Plaintiffs' second cause of action must be dismissed for the additional reason that Plaintiffs failed to exhaust their administrative remedies under the B-Plan and because they failed to include the B-Plan as a party to this lawsuit. Plaintiffs' third cause of action is not a cognizable cause of action under USERRA, and, in any event, Plaintiffs' allegations fail to support such a claim. Accordingly, Continental prays that Plaintiffs' first three causes of action will be dismissed with prejudice, that all Plaintiffs except Andrew Kissinger will be dismissed from this lawsuit, and that Continental will be awarded its costs, fees, and such other and further relief to which it may be entitled.

Respectfully submitted,

/s/    Jeffrey C. Londa
Jeffrey C. Londa, TX #12512400, Fed. ID 00506
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
jeffrey.londa@ogletreedeakins.com
500 Dallas Street, Suite 3000
Houston, Texas 77002-4709
(713) 655-5750 (Phone)
(713) 655-0020 (Fax)

**ATTORNEY-IN-CHARGE FOR DEFENDANT
CONTINENTAL AIRLINES, INC.**

Of Counsel:
Flyn L. Flesher, TX #24059756, Fed. ID 873686
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
flyn.flesher@ogletreedeakins.com
500 Dallas Street, Suite 3000
Houston, Texas 77002-4709
(713) 655-5752 (Phone)
(713) 655-0020 (Fax)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of October, 2009, a copy of the foregoing pleading was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

/s/    Jeffrey C. Londa
Jeffrey C. Londa