UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEREK CARDER, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. H-09-3173 |
| | § | |
| CONTINENTAL AIRLINES, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

**I. Introduction**

Pending before the Court is the defendant, Continental Airlines, Inc.'s ("Continental") motion to dismiss pursuant Federal Rule of Civil Procedure 12(b)(1), (6) and (7) (Docket Entry No. 34). The plaintiffs, Derek Carder, Mark Bolleter, Drew Daugherty and Andrew Kissinger (collectively the "plaintiffs"), submitted a response to this motion (Docket Entry No. 41). Having carefully reviewed the parties' submissions, the record and the applicable law, the Court hereby grants Continental's motion to dismiss in-part and denies the motion in-part.

**II. Factual Background**

Continental is an air carrier. Carder, Bolleter and Daugherty are currently employed by Continental as pilots. Kissinger is a pilot who Continental declined to hire. Each of the plaintiffs is, or was, a member of the armed forces. As described below, the plaintiffs assert that Continental has violated the Uniformed Services Employment and Reemployment Rights Act ("USERRA") through various acts of malfeasance against pilots who are current or former members of the armed forces.

Continental's pilots are employed subject to a collective bargaining agreement (the "CBA") between Continental and the Airline Pilots Association. Pursuant to the CBA, a

seniority-based preferential bidding system (the "PBS") was implemented to facilitate pilot scheduling. Under this system, greater seniority equates to greater benefits of employment. The PBS is utilized to incorporate military leave into the system by blocking off a pilot's availability and granting them a credit of time in the construction of their schedule.

Pursuant to the CBA, Continental established a pilot-only money purchase, defined contribution pension plan (the "B-Plan"). Under this plan, pilots with military obligations are eligible for B-Plan contributions from Continental that are calculated on the amount they would have worked if they had not gone on military leave.

The plaintiffs assert that they have been subjected to a continuous pattern of harassment by Continental during their employment as pilots. Specifically, the plaintiffs maintain that they were the subject of harassment premised upon their military service.

The present complaint alleges that Continental has violated USERRA in multiple ways. First, the plaintiffs state that they have been denied certain seniority benefits because of their military service. Second, they complain that Continental has engaged in discrimination against members of the armed forces with regard to B-Plan contributions. The plaintiffs' last allegation against Continental is that it has subjected them to a hostile work environment.

### III. Contentions

#### A. The Defendant's Contentions

Continental asserts that each of the plaintiffs' claims against it should be dismissed. Initially, it argues that several of the causes of action should be dismissed because the Railway Labor Act (the "RLA") requires mandatory arbitration of these claims, and therefore, this Court has no jurisdiction. Second, Continental maintains that the plaintiffs' Employee Retirement Income Security Act ("ERISA") based claims must be dismissed because the B-Plan was not

named as a party and/or the plaintiffs failed to exhaust the administrative remedies available to them under the B-Plan. Lastly, Continental states that the hostile work environment claim must be dismissed because no such cause of action exists under USERRA, or in the alternative, the plaintiffs have not sufficiently alleged a violation.

### B. The Plaintiffs' Contentions

The plaintiffs contend that their claims should not be dismissed. They assert that the RLA does not preclude any of their claims because none of the claims require construction of the CBA. Further, the plaintiffs maintain that, to the extent that ERISA might require exhaustion of administrative remedies in the present case, this requirement is precluded by USERRA. They also argue that the B-Plan is not a required party to any of the claims. Lastly, the plaintiffs state that they have sufficiently pleaded a viable hostile work environment claim under USERRA.

## IV. Standard of Review

### A. Legal Standard for Rule 12(b)(1)

A motion to dismiss filed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction must be considered by the court "before any other challenge because the court must find jurisdiction before determining the validity of a claim." *Moran v. Kingdom of Saudi Arabia,* 27 F.3d 169, 172 (5th Cir. 1994) (internal citation omitted). Since federal courts are considered courts of limited jurisdiction, absent jurisdiction conferred by statute, federal courts lack the power to adjudicate claims. *See, e.g., Stockman v. Fed. Election Comm'n,* 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994). Therefore, the party seeking to invoke the jurisdiction of a federal court carries the burden of proving its existence. *Stockman,* 138 F.3d at 151; *Cross Timbers Concerned Citizens v. Saginaw,* 991 F. Supp. 563, 566 (N.D. Tex. 1997).

In ruling on a motion to dismiss for lack of subject matter jurisdiction, "a district court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.,* 957 F.2d 178, 181 (5th Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).  In making its ruling, the district court may rely on any of the following:  "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *MDPhysicians,* 957 F.2d at 181 n.2 (citing *Williamson*, 645 F.2d at 413).

The standard of reviewing a motion to dismiss pursuant to 12(b)(1) depends on whether the defendant has made a "facial" or "factual" jurisdictional attack on the plaintiff's complaint. *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981).  A defendant makes a "facial" jurisdictional attack on a plaintiff's complaint by merely filing a motion under Rule 12(b)(1).  *Id.* In this instance, the court is merely required to assess the sufficiency of the allegations contained in the plaintiff's complaint, which are presumed to be true.  *Id.*  A "factual" attack, however, is made by providing affidavits, testimony and other evidentiary materials challenging the court's jurisdiction.  *Id.*  When a "factual" jurisdictional attack has been made by a defendant, the plaintiff is required to submit facts in support of the court's jurisdiction and bears the burden of proving by a preponderance of the evidence that the court, in fact, has subject matter jurisdiction. *Id.*

### B.  Legal Standard for Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).  Under the demanding strictures of a Rule 12(b)(6) motion, "the plaintiff's complaint is to be construed in a

light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996). In essence, "the district court must examine the complaint to determine whether the allegations provide relief on any possible theory." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001.) Under Rule 12(b)(6), a court will dismiss a complaint only if the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level, [even with] the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations, footnote and emphasis omitted). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

### C.  Legal Standard for Rule 12(b)(7)

"The Court may dismiss a claim pursuant to [Federal Rule of Civil Procedure] 12(b)(7) for 'failure to join a party under Rule 19.'" *J & J Sports Prods., Inc. v. Tawil*, No. SA-09-CV-327, 2009 WL 3761766, at *2 (W.D. Tex. Nov. 9, 2009) (quoting Fed. R. Civ. P. 12(b)(7)). "Rule 19 provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue. It further provides for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined." *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003) (internal citations omitted). If a party can be added without destroying jurisdiction, then the court should undergo a two part analysis:

> A court must first determine whether a party should be added under the requirements of Rule 19. Next, it must determine whether litigation can be properly pursued without the absent party under Rule 19. If a required party cannot be joined, a court must consider whether the action should proceed among the existing parties or be dismissed as a matter of equity.

*Ash Grove Tex., L.P. v. City of Dallas*, No. 3:08-CV-2114-O, 2009 WL 3270821, at *7 (N.D. Tex. Oct. 9, 2009) (internal citations and quotation marks omitted).  The U.S. Supreme Court has recognized four factors that must be considered when determining if a court should proceed without an indispensable party:

> (1) the plaintiff's interest in securing a forum for his lawsuit; (2) the defendant's interest in avoiding "multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another;" (3) the interest of the "outsider whom it would have been desirable to join;" and (4) the interest of the courts and the public in "complete, consistent, and efficient settlement of controversies."

*Kelly v. Commercial Union Ins. Co.*, 709 F.2d 973, 977 (5th Cir. 1983) (quoting *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 109–11 (1968)).  With regard to the burdens established under Rule 19, District Judge Lee H. Rosenthal (United States District Court, S.D. Texas) has stated:

> In ruling on a motion to dismiss for failure to join a necessary and indispensable party, a court must accept the complaint allegations as true. *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 479 n.2 (7th Cir. 2001). The moving defendant has the burden of showing that a party must be joined for just adjudication. *Ploog v. HomeSide Lending, Inc.*, 209 F. Supp. 2d 863, 873 (N.D. Ill. 2002) ("The proponent of a Rule 12(b)(7) motion to dismiss has the burden of producing evidence which shows the nature of the absent party's interest and that the protection of that interest will be impaired or impeded by the absence."). The analysis under Rule 19 is fact-specific. *See Rhone-Poulenc Inc. v. Int'l Ins. Co.*, 71 F.3d 1299, 1301 (7th Cir. 1995) (stating that a Rule 19 determination depends on the circumstances of the case). Determinations as to whether a party is required under Rule 19(a) and indispensable under Rule 19(b) are not mechanical and "the court must consider the practical potential for prejudice in the context of the particular factual setting presented by the case at bar." *Schlumberger Indus. Inc. v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1286 (4th Cir. 1994) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968)).

*United States v. Rutherford Oil Corp.*, No. G-08-0231, 2009 WL 1351794, at *2 (S.D. Tex. May 13, 2009).

**V. Analysis & Discussion**

The plaintiffs allege that Continental has violated multiple sections of USERRA. This federal statute "protects employees from being discriminated against by their employers because of their military service." *McIntosh v. Partridge*, 540 F.3d 315, 320 (5th Cir. 2008 (citing 38 U.S.C. § 4311). Specifically, "USERRA's purpose is, inter alia, to 'eliminat[e] or minimiz[e] the disadvantages to civilian careers and employment which can result' from non-career military service." *Day v. Lockheed Martin Space Sys. Co.*, 304 Fed. Appx. 296, 287 (5th Cir. 2008) (quoting 38 U.S.C. § 4301(a)(1)) (unreported opinion). To this end, the statute provides that:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.
> * * *
> An employer shall be considered to have engaged in [prohibited] actions prohibited if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service . . . .

The plaintiffs' specific allegations under USERRA, and Continental's rebuttals thereto, are addressed below.

### A. Alleged Denial of Seniority Benefits and the RLA

In their first cause of action, the plaintiffs allege that "Continental has violated USERRA by depriving [the plaintiffs] employment benefits through discriminatory scheduling practices." Specifically, they maintain that Continental "utilizes PBS to construct trip assignments around each pilot's military leave . . . that are far inferior, lower in quality and/or contain fewer hours and thus less pay than their seniority allows them to hold." Continental rebuts that this cause of

action "must be dismissed under Rule 12(b)(1) because [it] . . . must be arbitrated under the RLA." This assertion is premised upon the rule that, for claims falling under "the RLA, minor disputes must be resolved through a compulsory, binding arbitration procedure . . . ." *Mitchell v. Cont'l Airlines, Inc.*, 481 F.3d 225, 231 (5th Cir. 2007). Under the RLA, "[m]inor disputes are those disputes which concern the application or interpretation of existing collective bargaining contracts . . . ." *Hendley v. Cent. of Ga. R.R. Co.*, 609 F.2d 1146, 1150 (5th Cir. 1980).

The Court takes guidance on this issue from Senior District Judge Paul A. Magnuson's (United States District Court, Minnesota District) discussion in *Roslyn v. Northwest Airlines, Inc.*, which stated:

> The majority of cases addressing RLA preemption involve underlying state law claims.[1] See *id*. However, the instant case involves two federal laws, the RLA and the USERRA. Thus, the issue is not necessarily one of *per se* preemption, but rather whether the RLA precludes a claim brought under the USERRA. Nevertheless, the preclusion inquiry, like the preemption inquiry, focuses on congressional intent and whether the two federal statutes are compatible. *See Schlitz v. Burlington N. R.R.*, 115 F.3d 1407, 1415 (8th Cir.1997) (relying on preemption standards to determine that the RLA precluded claim under Age Discrimination in Employment Act ("ADEA")).

No. 05-0441, 2005 WL 1529937, at *2 (D. Minn. June 29, 2005) (unreported opinion) (footnote in original). Accordingly, in determining whether this cause of action ought to be dismissed, the Court will look to state law preemption cases to determine "congressional intent and whether the two federal statutes are compatible."

---

[1] Courts addressing the issue of whether the RLA preempts underlying state law claims have divided claims into two categories. "Major" disputes involve the formation of collective bargaining agreements. *See Hawaiian Airlines, Inc.*, 512 U.S. at 252. "Minor" disputes involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." See id. (quoting *Bhd. of R.R. Trainmen v. Chicago River & Ind. R.R. Co.*, 353 U.S. 30, 33, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957)). Generally, "minor" disputes are preempted by the RLA. *See Hawaiian Airlines, Inc.*, 512 U.S. at 252-53. However, "where there is a statutory basis for the claim, the 'major/minor dispute' analysis becomes irrelevant." *Carpenter v. Northwest Airlines, Inc.*, File No. 00-2490, 2001 WL 1631445, at *3 (D. Minn. June 7, 2001) (Montgomery, J.) (quotations omitted), aff'd 47 Fed. Appx. 424, 2002 WL 31102569 (8th Cir. Sept. 23, 2002).

"Under the [RLA], minor disputes involving the interpretation of terms in an existing collective bargaining agreement . . . must be resolved through binding arbitration . . . ." *BNSF Ry. Co. v. Bhd. of Maint. of Way Employees*, 550 F.3d 418, 423 (5th Cir. 2008). A minor dispute grows "out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252–53 (1994). On this issue, the Fifth Circuit has held "that 'a claim is preempted by the RLA only if it relies on the interpretation of a provision of the CBA; if the claim is brought under state law without any reference to the CBA, then it is not preempted.'" *Kollar v. United Transp. Union*, 83 F.3d 124, 126 (5th Cir. 1996) (quoting *Norris*, 512 U.S. at 282). Further, "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Norris*, 512 U.S. at 261 n.8 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)).[2] The Court finds that, in the case at bar, the meaning of the CBA's terms are the subject of dispute, and as such, this cause of action must be dismissed.

In their first cause of action, the plaintiffs allege that Continental's scheduling practices violate USERRA. The complaint does not explicitly allege that the CBA is inconsistent with USERRA. However, the plaintiffs do maintain that certain seniority benefits guaranteed under the CBA are being denied to them by the application of the PBS. Specifically, they state that:

> Pilots with more seniority are afforded more benefits of employment as set forth in [the CBA,] which provides: "seniority, in accordance with a pilot's position on the current Continental Pilot System Seniority List, will govern all pilots in case of promotion or demotion . . ., retention in case of reduction in force, assignment

---

[2] It is of note that this standard arose with regards to the Labor Management Relations Act (the "LMRA"). However, the U.S. Supreme Court has noted that "[g]iven th[e] convergence in the pre-emption standards under the two statutes, we conclude that [the LMRA] provides an appropriate framework for addressing pre-emption under the RLA, and we adopt the [LMRA] standard to resolve claims of RLA pre-emption." *Norris*, 512 U.S. 246, 263. Accordingly, application of the LMRA framework to the RLA is appropriate.

9 / 18

> or reassignment due to expansion or reduction in flying time, recall after furlough due to reduction in force, monthly Line award, and choice of vacancies."
>
> * * *
>
> Continental denies the Class a benefit of their employment through PBS by building schedules around their military leave and not in accordance with each pilot's seniority.

Accordingly, the outcome determinative inquiries are what rights are guaranteed under the CBA and whether such rights are being denied to the plaintiffs. Resolution of these questions necessarily entails "the interpretation of a provision of the CBA." *See Kollar*, 83 F.3d at 126. As the parties differ with regard to whether the plaintiffs are not being granted all privileges of their seniority, they necessarily disagree about what seniority rights are provide for under the CBA (an issue of interpretation). *See Norris*, 512 U.S. at 261 n.8. Pursuant these findings, this cause of action falls under the RLA and must be dismissed.

### B.  The B-Plan, USERRA and ERISA

In their second cause of action, the plaintiffs assert that "Continental violated USERRA by depriving Plaintiffs . . . employment benefits through the discriminatory practices in the underpayment of B-Plan retirement contributions." Further, they state that Continental breached USERRA by failing to "treat the period of military leave as service with the employer for purposes of vesting and the accrual of pension benefits[, despite the rule that p]ension benefits should accrue as though the employees were available but for the military service."

The parties agree that the B-Plan is a pension plan that falls under ERISA. Continental argues that if a plan beneficiary "seek[s] to recover benefits from a plan covered by ERISA, their exclusive remedy is provided by ERISA . . . ." Further, it points out the rule that "claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits." *Bourgeois v. Pension Plan for Employees of Santa Fe Intern. Corps.*, 215 F.3d 475, 479 (5th Cir. 2000). Premised upon these grounds,

Continental asserts that the second cause of action must be dismissed because the plaintiffs did not exhaust the remedies available under the B-Plan.

The plaintiffs attempt to rebut this position through a two part argument. First, they posit that ERISA plans are subject to USERRA, and therefore, any rights granted under USERRA are not precluded by ERISA. Second, they argue that USERRA preempts any contractual preconditions to suit (such as administrative remedies in the B-Plan). The Court agrees with the plaintiffs.

With regard to the plaintiffs' argument that "ERISA plans are covered under USERRA," the Court looks to the Code of Federal Regulations, which states:

> The Employee Retirement Income Security Act of 1974 (ERISA) defines an employee pension benefit plan as a plan that provides retirement income to employees, or defers employee income to a period extending to or beyond the termination of employment. *Any such plan maintained by the employer or employers is covered under USERRA*.

20 CFR § 1002.260 (emphasis added). This clause expressly holds that ERISA plans are subject to USERRA. From this, the plaintiffs argue that USERRA precludes application of the ERISA rule that administrative procedures must be exhausted prior to filing suit. The Court agrees. This conclusion is supported by 38 U.S.C. § 4302, which provides, with regards to USERRA, that:

> (a) Nothing in this chapter shall supersede, nullify or diminish any Federal or State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter.
>
> (b) This chapter supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

Subsection (a) establishes that USERRA does not preempt/preclude any law that provides benefits beyond those established by USERRA.  In contrast, under subsection (b), USERRA does preempt/preclude laws or policies that diminish rights thereunder.  To the extent that ERISA requires exhaustion of administrative remedies, it is *reducing* benefits provided by USERRA.  This is inconsistent with § 4302(b) and § 1002.260.  Thus, to the extent that USERRA applies to ERISA plans, exhaustion of administrative remedies is not required.

Moreover, with regard to the requirements under the B-Plan that administrative remedies be exhausted, § 4302(b) expressly provides that USERRA supersedes, among other things, any contract that would "establish[] additional prerequisites to the exercise of any [right granted under USERRA.]"  The B-Plan falls under subsection (b).  It establishes administrative procedures that must be followed prior to exercising rights granted by USERRA.  This is inconsistent with subsection (b).  Therefore, to the extent that a party is exercising rights under USERRA, that party need not adhere to the administrative requirements in the B-Plan.  Accordingly, as the plaintiffs' second cause of action is brought under USERRA, they are under no obligation to exhaust the remedies provided by the B-Plan.  Thus, this claim need not be dismissed for failing to exhaust administrative remedies.[3]

### C.  The B-Plan and Rule 19

Continental asserts that the B-Plan is a required party under Rule 19.  Accordingly, it argues that the plaintiffs' failure to name the B-Plan as a party necessitates dismissal of their second cause of action under Rule 12(b)(7).  Rule 19, in pertinent part, provides that:

---

[3] The Court notes that Continental points out that if a plan beneficiary "seek[s] to recover benefits from a plan covered by ERISA, their exclusive remedy is provided by ERISA . . . ."  This rule is supported by case law.  *See Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 979 (5th Cir. 1991).  However, this rule is not applicable to the present case.  As the plaintiffs point out, they "are not requesting payments *from* the B-Plan . . . ."  Rather, they are "protesting Defendant's calculation of contributions made outside of the management of the B-Plan which are then deposited by Defendant to the B-Plan."

>A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>   (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>   (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>       (i) as a practical matter impair or impede the person's ability to protect the interest; or
>       (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

The Court will not grant Continental's requested relief on this issue. Outside of the assertion that "[t]he ERISA plan is a required party in any case seeking benefits from the plan," Continental has failed to explain why dismissal is warranted under Rule 19. Further, as the plaintiffs have alleged "underpayment of B-Plan retirement contributions" *by Continental*—as opposed to malfeasance in the operation *of the actual B-Plan*—the Court does not immediately see why the B-Plan is a required party. Accordingly, Continental's requested relief is denied on this issue.

### D. Alleged Denial of Retirement Benefits and the RLA

Similar to the plaintiffs' first cause of action, Continental asserts that the "second cause[] of action must be dismissed under Rule 12(b)(1) because [it is a] minor disputes that must be arbitrated under the RLA." The Court agrees.

"[T]he special boards of adjustment provided for in the Railway Labor Act have 'exclusive jurisdiction' over minor disputes." *Ruby v. TACA Intern. Airlines, S.A.*, 439 F.2d 1359, 1362 (5th Cir. 1971). As such, in order for this Court to maintain jurisdiction, it must be established that the present cause of action is not a minor dispute. As discussed above, "[t]he party asserting jurisdiction bears the burden of proof for a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss." *Castro v. United States*, 560 F.3d 381, 386 (5th Cir. 2009) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). Accordingly, for this Court to

maintain jurisdiction, the plaintiffs must establish that their second cause of action is not a minor dispute.

In making this jurisdictional determination, the Court will "view all the facts in a light most favorable to the plaintiff." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009) (citing *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 448 (5th Cir. 2008) (Dennis J., dissenting)). Further, "under Rule 12(b)(1), the court may consider any of the following: '(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Walch v. Adjutant Gen.'s Dept. of Tex.*, 533 F.3d 289, 293 (5th Cir. 2008) (quoting *Robinson v. TCI/US W. Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997)). Even under this forgiving standard, plaintiffs are unable to establish jurisdiction over their second cause of action.

As discussed with regard to the plaintiffs' first cause of action, the Fifth Circuit has held "that 'a claim is preempted by the RLA only if it relies on the interpretation of a provision of the CBA; if the claim is brought under state law without any reference to the CBA, then it is not preempted.'" *Kollar v. United Transp. Union*, 83 F.3d 124, 126 (5th Cir. 1996) (quoting *Norris*, 512 U.S. at 282). Further, "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Norris*, 512 U.S. at 261 n.8 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)). Thus, in order to establish jurisdiction at present, the plaintiffs would solely need to have alleged that the CBA need not be construed to address this issue. Further, the plaintiffs could have introduced into the record a portion of the CBA that evidences that the CBA need not be construed to address the second

cause of action. However, the plaintiffs have failed to do this. Accordingly, the cause of action must be dismissed.[4]

### E. Hostile Work Environment and USERRA

In their third cause of action, plaintiffs allege that "Continental violated Section 4311 of USERRA by creating a hostile work environment through harassing, discriminatory and degrading comments and conduct related to and arising in and out of Plaintiffs United States Armed Services and National Guard membership and service obligations." In response, Continental states that USERRA "does not provide for a hostile work environment cause of action." Continental further points out that "[n]either the Supreme Court nor any federal court of appeals has ever interpreted USERRA to create liability for a hostile work environment. Also, no district court in the Fifth Circuit has ever reached such an interpretation . . . ." However, it is also true that no federal appellate court or Fifth Circuit district court has ever interpreted USERRA to not create liability for a hostile work environment. In addressing this issue of first impression in this circuit, the Court looks to other district courts for guidance.

On this topic, Senior District Judge Conway (United States District Court, New Mexico District) has stated:

> The Tenth Circuit has not addressed the question whether USERRA provides a cause of action for hostile work environment or harassment. Other courts who have confronted this question have found that USERRA does provide for a hostile work environment cause of action, and they have applied the same analysis as hostile work environment claims brought pursuant to Title VII. *See, e.g., Dees v. Hyundai Motor Mfg. Alabama, LLC*, 605 F. Supp. 2d 1220, 1228 (M.D. Ala.2009) (holding that "USERRA-harassment claims, like those under Title VII should be analyzed using the principle announced by the Supreme Court in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986): harassment is actionable when it is 'sufficiently severe or pervasive to

---

[4] Should the plaintiffs believe that they can establish that this Court has jurisdiction through an amendment to their complaint or through the introduction of evidence into the record, the Court hereby grants leave to do this within 15 days of the entry of this memorandum opinion.

> alter conditions of [the victim's] employment and create an abusive working environment'").

*Otero v. N.M. Corr. Dept.*, 640 F. Supp. 2d 1346, 1358 (D.N.M. 2009). In an opinion cited by Judge Conway, District Judge Thompson (United States District Court, M.D. Alabama) stated:

> One case to address [whether USERRA creates a cause of action for hostile work environment] is *Petersen v. Department of Interior*, 71 M.S.P.R. 227 (1996). In *Petersen*, the plaintiff contended that he had been harassed as a result of his prior military service. *Petersen* examined the legislative history of the term "benefit of employment" and found that Congress intended the phrase to be interpreted expansively in order to support veterans, *id.* at 236, and also noted that the Supreme Court has broadly construed predecessor statutes. *Id.* at n.8 (citing *Coffy v. Rep. Steel Corp.*, 447 U.S. 191, 196, 100 S.Ct. 2100, 65 L.Ed.2d 53 (1980) ("The statute is to be liberally construed for the benefit of the returning veteran.")). *Petersen* then stated that, "Although the appellant's hostile environment claim does not clearly fall within the term 'benefit,' we are persuaded that an 'expansive interpretation' of that term, as intended by Congress, leads to the conclusion that it does." *Id.* at 237. *Petersen*'s conclusion was bolstered by courts' consistent holdings that other anti-discrimination statutes lacking anti-harassment language (including Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112) nevertheless proscribe harassment as a kind of discrimination. *Id.* at 238–39. The Eleventh Circuit Court of Appeals has also acknowledged the prohibition on harassment into other anti-discrimination statutes. *See., e.g., Davis v. DeKalb County Sch. Dist.*, 233 F.3d 1367 (11th Cir.2000) (school district may be liable under Title IX for teacher's sexual harassment of a student).

*Dees v. Hyundai Motor Mfg. Ala., LLC*, 605 F. Supp. 2d 1220, 1227 (M.D. Ala. 2009). However, to the contrary, District Judge Gelpi (United States District Court, Puerto Rico District) has stated:

> "USERRA prohibits the denial of any benefit of employment by an employer to members of the uniformed service based on their membership and/or performance of service, but does not specifically prohibit an employer from subjecting an employee to harassment or a hostile work environment due to the employee's military status." *Ortiz Molina*, 2006 WL 2639297, *5 (internal citations omitted); *see also Figueroa Reyes*, 389 F. Supp. 2d at 212. Therefore, plaintiff's claim of harassment in the form of a hostile work environment is not cognizable under USERRA. For that reason, the court GRANTS defendant's motion for summary judgment as to the USERRA hostile work environment claim.

*Baerga-Castro v. Wyeth Pharm.*, No. 08-1014, 2009 WL 2871148, at *12 (D.P.R. Sept. 3, 2009); *contra Vega Colon v. Wyeth Pharm.*, 611 F. Supp. 2d 110, 116–117 (D.P.R. 2009).

In determining whether to recognize the hostile work environment cause of action under USERRA, the Court returns to the maxim that "[w]hen interpreting statutes, we begin with the plain language used by the drafters." *Waggoner v. Gonzales*, 488 F.3d 632, 636 (5th Cir. 2007) (citing *United States v. Uvalle-Patricio*, 478 F.3d 699, 703 (5th Cir. 2007)). Further, "[w]hen the plain language of a statute is unambiguous, there is no need to resort to legislative history for aid in its interpretation." *Tidewater Inc. v. United States*, 565 F.3d 299, 303 (5th Cir. 2009). Lastly, the Court recognizes that it is "authorized to deviate from the literal language of a statute only if the plain language would lead to absurd results, or if such an interpretation would defeat the intent of Congress." *Kornman & Assocs., Inc. v. U.S.*, 527 F.3d 443, 451 (5th Cir. 2008) (citing *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004); *Johnson v. Sawyer*, 120 F.3d 1307, 1319 (5th Cir. 1997)).

With this standard for statutory interpretation in mind, Judge Gelpi's analysis of hostile work environment claims seems the better construction of USERRA. *See Baerga-Castro*, 2009 WL 2871148, at *12. The Court recognizes that USERRA expressly prevents the denial of benefits of employment to members of the uniformed service by their employers. However, under a plain language analysis, the scope of this protection does not include safeguarding from a hostile work environment. The term "benefit" is defined as an "[a]dvantage[ or] privilege" or a "[p]rofit or gain." Black's Law Dictionary 178 (9th ed. 2009). The avoidance of a hostile work environment does not fall into either of these definitions. These definitions of "benefit" connote obtaining some gain above the expected status quo. In no way does avoiding a hostile work place grant such a gain. Accordingly, the Court finds that, under a plain language interpretation,

USERRA does not provide for a hostile work environment cause of action.  As such, it is not necessary to look to extrinsic evidence to construe this statute.  Under these considerations, the claim must be dismissed.

### VI. Conclusion

Based on the preceding discussion, the Court hereby GRANTS Continental's motion to dismiss in-part and DENIES the motion in-part.

It is so **ORDERED**.

SIGNED at Houston, Texas this 30th day of November, 2009.

Kenneth M. Hoyt
United States District Judge