UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEREK CARDER, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:09-CV-3173 |
| | § | |
| CONTINENTAL AIRLINES, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

**I.     INTRODUCTION**

Pending before the Court is the defendant's, Continental Airlines, Inc. ("Continental"), second motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1), (6) (Docket No. 82). The plaintiffs, Derek Carder, Mark Bolleter, Drew Daugherty, and Andrew Kissinger (the "plaintiffs"), have submitted a response (Docket No. 88). Also before the Court are Continental's reply and supplemental reply (Docket Nos. 90 and 92), and the plaintiffs' sur-reply (Docket No. 94). Having carefully reviewed the parties' submissions, the record and the applicable law, the Court hereby GRANTS Continental's motion to dismiss with respect to the first cause of action and DENIES the motion with respect to the second and third causes of action.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

Continental is an air passenger carrier. Derek Carder, Mark Bolleter, and Drew Daugherty are employed as pilots by Continental; Kissinger, a pilot, claims that Continental refused to hire him. The plaintiffs are all either current or former members of the armed forces. Pilots employed by Continental are subject to a collective bargaining agreement ("CBA") between Continental and the Airline Pilots Association (the "Pilots Association"). Pursuant to

the CBA, Continental established a pilot-only money purchase, defined contribution plan (the "B-plan"). The CBA provides that Continental will make monthly contributions to each pilot's account under the B-Plan "in an amount equal to the following percentage of the pilot's Compensation each month . . . ." The CBA also contains provisions dealing with certain benefits for pilots, including vacation and sick time accrual and medical coverage.

In their original class action complaint, the plaintiffs raised several causes of action under the Uniformed Services Employment And Reemployment Rights Act, 38 U.S.C. § 4301 *et seq*. ("USERRA"), a statute that prohibits civilian employers from discriminating against employees based on their military service. The plaintiffs specifically claimed that Continental violated USERRA: by (1) discriminatory scheduling practice, such as inferior trip assignments to the plaintiffs; (2) underpaying B-Plan retirement contributions; (3) creating a hostile work environment based on the plaintiffs' membership in the armed forces; and (4) denying employment to some of the plaintiffs based on military status.

Continental filed a motion to dismiss the plaintiffs' first three causes of action. In a Memorandum Opinion from November 30, 2009, this Court granted in part, and denied in part, Continental's first motion to dismiss (the "first decision"). Specifically, the Court dismissed the first three causes of action, but granted the plaintiffs leave to amend their complaint to establish whether the Court has jurisdiction over the pension plan cause of action.

Subsequently, this Court granted the plaintiffs' Motion for a Certificate of Appealability only with respect to the dismissal of the hostile work environment cause of action. On March 22, 2011, the Fifth Circuit affirmed this Court's November 30, 2009, decision, and the plaintiffs' petition for a writ of certiorari to the United States Supreme Court was denied.

The plaintiffs have since filed a First and Second Amended complaint, claiming that Continental has violated USERRA, depriving them of employment benefits by: (1) underpaying B-Plan contributions; (2) disallowing the accrual of vacation and sick time credit during periods of military leave although those same benefits are available to employees during periods of non-military leave; (3) disallowing medical, dental, and vision coverage during periods of military leave although those same benefits are available to other employees during periods of non-military leave; and (4) denying employment to some of the plaintiffs based on their military service.

### III.   CONTENTIONS OF THE PARTIES

#### A.   Continental's Contentions

Continental argues that this Court lacks subject matter jurisdiction over the plaintiffs' first three causes of action because they are precluded by the mandatory arbitration provision in the Railway Labor Act ("RLA"). Specifically, Continental contends that the first three causes of action involve minor disputes, *i.e.*, disputes that are based solely on the CBA and that require interpretation and application of the CBA and, as such, must be resolved through arbitration. Alternatively, Continental claims that, even assuming the Court has subject matter jurisdiction, the plaintiffs' second and third causes of action should be dismissed because the plaintiffs, while on military leave, are not treated less favorably than employees on comparable forms of leave.

#### B.   The Plaintiffs' Contentions

The plaintiffs argue that this Court has subject matter jurisdiction over their causes of action because they arise independently of the CBA and, as such, are not precluded by the arbitration provision of the RLA. The plaintiffs specifically allege that their causes of action arise from Continental's violations of USERRA and, while the Court may need to refer to the

CBA, it is not required to interpret or apply its provisions. Furthermore, the plaintiffs contend that Continental's alternative argument to dismiss the second and third causes of action should be rejected because pilots on military leave do not receive benefits that are afforded to pilots who take other comparable forms of leave.

## IV. STANDARD OF REVIEW

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) permits the dismissal of an action for the lack of subject matter jurisdiction. "If [a federal] court determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action." Fed. R. Civ. P. 12(h)(3). Because federal courts are considered courts of limited jurisdiction, absent jurisdiction conferred by statute, they lack the power to adjudicate claims. *See, e.g., Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994). Therefore, the party seeking to invoke the jurisdiction of a federal court carries "the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (citing *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008); *see also Stockman*, 138 F.3d at 151.

When evaluating jurisdiction, "a [federal] court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)); *see also Vantage Trailers*, 567 F.3d at 748 (reasoning that "[i]n evaluating jurisdiction, the district court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations"). In making its ruling, the court may rely on any of the

following: "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *MDPhysicians*, 957 F.2d at 181 n.2 (citing *Williamson*, 645 F.2d at 413).

    **B.**    **Rule 12(b)(6)**

A defendant may move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). Under the requirements of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991)). Dismissal is appropriate only if, the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Moreover, in light of Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary; the [allegations] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*) (quoting *Twombly*, 550 U.S. at 555). Even so, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Therefore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009) (quoting *Twombly*,

550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1955). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" *Ashcroft*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). Nevertheless, when considering a 12(b)(6) motion to dismiss, a court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his claims, not whether the plaintiff will eventually prevail. *See Twombly*, 550 U.S. at 563, 1969 n.8 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed.2d 90 (1974)); *see also Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

## V. ANALYSIS AND DISCUSSION

The Uniformed Services Employment And Reemployment Rights Act, 38 U.S.C. § 4301 *et seq*. ("USERRA"), prohibits civilian employers from discriminating against employees based on their military service. *See Carder v. Continental Airlines, Inc.*, 636 F.3d 172, 173 (5th Cir. 2011); *see also Rogers v. City of San Antonio*, 392 F.3d 758, 762 (5th Cir. 2004). Section 4311(a) provides that:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4301(a); *see also Carder*, 636 F.3d at 175. "An employer shall be considered to have engaged in actions prohibited":

> if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service . . .

38 U.S.C. § 4301(c)(1). The Statute defines "benefit of employment" as follows:

> The term "benefit", "benefit of employment", or "rights and benefits" means any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

38 U.S.C. § 4303(2); *see also Carder*, 636 F.3d at 175.

The plaintiffs claim that Continental violated USERRA by underpaying into the pilot-only pension plan and disallowing the accrual of vacation credit, sick time credit, and medical, dental and vision coverage during periods of military leave even though those same benefits are available to other pilots during periods of non-military leave. Continental, on the other hand, argues that this Court lacks subject matter jurisdiction over the first three causes of action because they are precluded by the mandatory arbitration provision in the Railway Labor Act ("RLA"). The Court finds that the pension plan cause of action is precluded by the RLA, but the second and third causes of action regarding the accrual of benefits and medical coverage are not precluded.

Congress passed the RLA to "promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc., v. Norris*, 512 U.S. 246, 252 (1994). "To realize this goal, the RLA establishes a mandatory

arbitral mechanism for 'the prompt and orderly settlement' of two classes of disputes." *Hawaiian Airlines*, 512 U.S. at 252; *see also CareFlite v. Office And Prof'l Employees Int'l Union, AFL-CIO*, 612 F.3d 314, 318 (5th Cir. 2010). The first class of disputes, known as "major disputes," are those "concerning rates of pay, rules or working conditions." *Hawaiian Airlines*, 512 U.S. at 252. Major disputes arise "when a CBA is not in place or when a party seeks to change the terms of a CBA." *Ballew v. Continental Airlines, Inc*., 668 F.3d 777, 782 (5th Cir. 2012).

The second type of dispute is called "minor disputes" and they grow "out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." *Carmona v. Southwest Airlines Co.*, 536 F.3d 344, 348 (5th Cir. 2008). "The 'distinguishing feature' of a minor dispute 'is that the dispute may be conclusively resolved by interpreting the existing [collective bargaining] agreement.'" *Id*. at 348 (citing *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 305, 109 S. Ct. 2477 (1989)). "To state that a claim can be 'conclusively resolved" by interpreting a CBA 'is another way of saying that the dispute does not involve rights that exist independent of the CBA.'" *Id*. at 348 (citing *Hawaiian Airlines*, 512 U.S. at 265). In other words, the "assertion of any right that is not created by a CBA is . . . not subject to binding arbitration under the statute." *CareFlite*, 612 F.3d at 320-321. Moreover, for the federal courts to have subject matter jurisdiction, it does "not require that the CBA be irrelevant to the dispute; [in fact,] either party may use the CBA to support the credibility of its claims." *Carmona*, 536 F.3d at 349 (citations omitted).

If the grievances are considered "minor disputes, they 'must be resolved only through the RLA mechanisms, including the carrier's internal dispute-resolution processes and an adjustment

8 / 16

board established by the employer and the unions.'" *CareFlite*, 612 F.3d at 318 (citing *Hawaiian Airlines*, 512 U.S. at 253).

### A. The Pension Plan Cause Of Action Is Precluded By The RLA.

In their first cause of action, the plaintiffs claim that Continental has violated USERRA through the underpayment of "B-Plan retirement contributions." The Court is of the opinion that this cause of action is precluded by the RLA.

In their Second Amended Complaint, the plaintiffs note that pursuant to Section 28, Part 4, subsection A, of the CBA, Continental maintains a separate pilot-only money purchase, defined contribution pension plan, "covering all pilots, line and management, active, retired and terminated" (the "B-Plan"). Section 28, Part 4, subsection E of the CBA, provides that Continental will make monthly contributions to each pilot's account under the B-Plan "in an amount equal to the following percentage of the pilot's Compensation each month, as defined in Section 28, Part 4.G below." Section 28, Part 4.G, addresses, in details, how compensation is defined. The plaintiffs also note that pursuant to Section 13, Part 3, of the CBA, Continental is required to "make such contributions to the B-Plan 'as required by the Plans and applicable law.'" The plaintiffs contend that Continental's procedure for calculating B-Plan contributions for military leave is not addressed in the CBA or B-Plan itself but is addressed in the Continental Pilot Bulletin dated March 13, 2007.[1] The plaintiffs assert, *inter alia*, that "Continental's current policy . . . is to review the average hours worked by the pilot during his or her last twelve (12) Active Status months ("12-month look-back") and use this number as the expected monthly earnings." The plaintiffs contend that the "12-month look-back does not take into account annual pay raises, upgrades in seats or equipment or the actual amount earned had the pilot not

---

[1] However, the bulletin specifically notes that a pilot's B-Plan contribution will be based upon the pilot's deemed "compensation" as the term compensation is defined in the relevant section of the CBA.

been on military leave. This calculation process is in complete violation of USERRA." Therefore, the plaintiffs conclude that "Continental has repeatedly and intentionally underpaid B-Plan contributions to pilots who are on military leave, thereby denying members of the Class a benefit employment."

The plaintiffs claim that the Court has subject matter jurisdiction over this cause of action because, while the Court may need to refer to the CBA, it is not required to interpret it. The Court disagrees. The Court is of the opinion that, as the plaintiffs' own allegations in the complaint illustrate, interpretation of the CBA is required with respect to this cause of action. For example, the Court would have to interpret the CBA and apply the relevant sections in order to determine how contributions into the B-Plan are made for pilots who are not on military leave. Then, the Court would have to examine the calculation methods in the March 13, 2007, bulletin in conjunction with the CBA to determine how contributions into the B-Plan are made for pilots who are on military leave. Indeed, the plaintiffs' extensive explanation regarding Plan-B calculations for pilots who are not on military leave as well as those who are on military leave, is further indication that the Court would have to interpret and apply the CBA. Thus, this cause of action is, in essence, a dispute over the terms (contributions) of a pension plan that is maintained pursuant to the CBA. Therefore, the Court finds that this pension cause of action is more analogous to the claims raised in *Ballew* and *Bowcock* and, as such, is precluded by the RLA. *See Ballew*, 668 F.3d at 780, 785 (where the plaintiffs claimed that the defendants misinterpreted the terms of their pension benefits, their claim was precluded by the RLA because, *inter alia*, the "pension claims here are undisputedly grounded in the CBA and require interpretation of the agreement . . . ."), *affirming Ballew*, No. H-10-1699, 2011 WL 1069313, at *1 (S.D. Tex. March 21, 2011); *Bowcock v. Continental Airlines, Inc.*, No. H-10-02372, 2010 WL 4812969, at *1, 3

(S.D. Tex. No. 19, 2010) (claim that the defendant's alleged misrepresentation about a benefit plan was a breach of the defendant's fiduciary duty under ERISA, was precluded by the RLA because the claim would require the court to examine and interpret the benefit plan and a letter of agreement), *aff'd*, 432 F. App'x 343 (5th Cir. 2011).[2]

### B. Alleged Denial of Certain Benefits to Pilots Who Are On Military Leave.

The Court finds that the plaintiffs' second and third causes of action are not precluded by the RLA.

In their second cause of action, the plaintiffs claim that Continental has violated USERRA by disallowing the accrual of vacation and sick time credit during periods of military leave although those same benefits are available to employees during periods of non-military leave. The plaintiffs specifically note that Section 7, Part 1, subsection B, of the CBA states that a "pilot will not accrue vacation during . . . that part of MLOA [military leave] that is beyond the ninetieth (90th) consecutive Calendar Day." The plaintiffs also note that Section 13, Part 4, subsection D, of the CBA allows for the accrual of vacation and sick time and states that "[a]ll benefits and accruals will be continued as if the pilot on ALA [Association Leave of Absence] were on Active Status," thereby "allowing benefits and accruals to accrue beyond ninety (90) consecutive days for non-military leave." Furthermore, the plaintiffs point out that Section 14, Part 2, subsection B of the CBA allows for the accrual of sick time when a pilot is on other forms of leave but does not do so for military leave. Therefore, the plaintiffs assert that "Continental

---

[2] In its first decision, the Court dismissed the pension plan cause of action but granted the plaintiffs leave to renew in order to establish whether the Court has jurisdiction. While, in that decision, the Court suggested that the plaintiffs can establish jurisdiction by simply alleging that the CBA need not be construed, upon further examination, the Court is of the opinion that such mere allegation would be insufficient. *See MDPhysicians & Assoc., Inc.*, 957 F.2d at 181 (when evaluating jurisdiction, "a [federal] court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case"). Therefore, although the plaintiffs, in their amended complaints, have alleged that interpretation of the CBA is not required, the Court has "satisfied itself" that it has no jurisdiction over this cause of action because interpretation and application of the CBA will be required.

has repeatedly and intentionally failed to allow [those] who are on military leave [to] accrue vacation and sick time for military leave beyond ninety (90) consecutive days, thereby denying members of the Class a benefit of employment" in violation of USERRA.

In their third cause of action, the plaintiffs claim that Continental has violated USERRA by disallowing medical, dental and vision coverage during periods of military leave although those same benefits are available to other employees during periods of non-military leave. The plaintiffs note that pursuant to Section 13, Part 6, subsection D(1)(a) of the CBA, Continental "will continue to provide medical, dental and vision coverages on the same terms and conditions as apply to an active pilot . . . for pilots on MLOA [military leave] through the end of the twelfth (12th) month following the month in which MOLA began . . . " The plaintiffs further note that pursuant to Section 13, Part 3, subsection D(1) of the CBA, "[f]or COLAs [Company offered Leave of Absence] offered pursuant to Section 23, Part 4.C, current medical, dental and vision coverages will be continued for the duration of the COLA on the same terms and conditions as are applicable to an active pilot" and there is no time limit for medical, dental, and vision coverages. Thus, the plaintiffs assert that Continental "has repeatedly and intentionally failed to provide its pilots who take military leave with medical, dental and vision coverages beyond twelve (12) months using the same terms as those provided to active pilots."

The Court is of the opinion that the plaintiffs' second and third causes of action are not minor disputes because they do not require interpretation of the CBA. Therefore, the Court has subject matter jurisdiction over those causes of action. As the complaint establishes, the plaintiffs do not take issue with respect to how Continental interprets the relevant provisions of the CBA. Rather, in their second cause of action, the plaintiffs argue that the provisions of the CBA that deal with vacation and sick time accrual discriminate against pilots who are on military

leave because they do not allow those pilots to accrue vacation and sick time for military leave beyond ninety (90) consecutive days. Similarly, with respect to their third cause of action, the plaintiffs do not challenge the manner in which Continental calculates medical, dental, and vision coverages under the CBA. Rather, they assert that Continental has discriminated against them, based on their military status, by failing to provide pilots who take military leave with medical, dental, and vision coverages beyond twelve (12) months in the same manner available to pilots who are not on military leave. Therefore, while the Court may refer to the relevant portions of the CBA in conducting its analysis, it need not interpret them, nor does it need to engage in a calculation of the benefits. In other words, the Court's task is straightforward: simply refer to the provisions of the CBA at issue and determine whether, as they exist, they discriminate against the plaintiffs based on their military status, in violation of USERRA. Accordingly, the Court has subject matter jurisdiction over the second and third causes of action. *See Carmona*, 536 F.3d at 359.

In fact, the Court is of the opinion that this case, with respect to the second and third causes of action, is analogous to *Carmona*. There, the male plaintiff, who was fired for excessive absenteeism, sued the airline for, *inter alia*, Title VII gender discrimination. The airline argued that the plaintiff's claims were minor because they were "inextricably intertwined" with the CBA. The Fifth Circuit rejected the airline's argument and specifically noted:

> [F]or the federal courts to have subject matter jurisdiction over claims . . . "do[es] not require that the CBA be irrelevant to the dispute; either party may still use the CBA to support the credibility of its claims." Southwest's contention that [the plaintiff's] claims necessitate CBA interpretation fails to recognize the distinction between reference to the CBA and reliance on it. As noted, the "distinguishing feature" of a minor dispute under the RLA is that "the dispute may be *conclusively* resolved by interpreting" the CBA.

> As provisions of the CBA are relevant to, but *not* dispositive of, the resolution of [the plaintiff's] claims, his claims do not constitute a minor dispute under the RLA. Even though a court would have to *refer to* the CBA to consider fully each of the alleged acts of disparate treatment, there is no disagreement about how to interpret these provisions of the CBA that detail Southwest's procedures for assessing attendance, leave, discipline, and termination.

*Carmona*, 536 F.3d at 349 (citations omitted and emphases in original); *see also Livadas v. Bradshaw*, 512 U.S. 107, 124, 114 S. Ct. 2068, 2078, 129 L. Ed. 2d 93 (1994) (when "the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of . . . litigation" does not require preemption of the claim). Similarly, as noted, in this case reference to the CBA may be necessary, but no interpretation of it is required.

Moreover, the Court is of the opinion that the plaintiffs' second and third causes of action cannot be "conclusively resolved" by interpreting the CBA and, in fact, the claims exist independently of the CBA. Indeed, the source of the plaintiffs' claims is the alleged violation of a federal statute and not the CBA itself. Therefore, the ultimate question will be whether Continental's practices regarding the denial of certain benefits violate USERRA, a federal statute that prohibits discrimination and disparate treatment based one a person's military status. *See Carmona*, 536 F.3d at 350 (the "realization that [the plaintiff] is seeking to enforce his federal statutory rights under Title VII and the ADA, not his contractual rights embodied in the CBA, bolsters the contention that [his] claims do not require CBA interpretation"); *CareFlite*, 612 F.3d at 320-321 (the "assertion of any right that is not created by a CBA is . . . not subject to binding arbitration under the statute"); *see also Hawaiian Airlines*, 512 U.S. at 258 (the Supreme Court noted that the "CBA [was] not the 'only source'" of the plaintiff's right not to be discharged

wrongfully and "[w]holly apart from any provision of the CBA, [the defendants] had a state-law obligation" to not violate the law); *Roslyn v. Northwest Airlines, Inc.*, No. 05-0441 (PAM/RLE), 2005 WL 1529937, at *3 (D. Minn. June 29, 2005) (claim was not precluded by the RLA because it arose out of a federal statutory right, under USERRA, not to be discriminated against based upon military status).[3]

Continental claims, in the alternative, that, even assuming the Court has subject matter jurisdiction, the plaintiffs' second and third causes of action should be dismissed pursuant to FED. R. CIV. P. 12(b)(6) because the plaintiffs cannot establish that they "were denied 'the most favorable treatment accorded to any comparable form of leave while they were on military leaves of absence." The Court disagrees.

As noted, under the requirements of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer*, 94 F.3d at 194. Furthermore, a court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his claims, not whether the plaintiff will eventually prevail. *See Twombly*, 550 U.S. at 563. In this case, the Court is of the opinion that the plaintiffs' complaints regarding their disparate treatment, namely the denial of certain benefits based on their military status, "contain sufficient factual matter" to state a claim for relief (*Ashcroft*, 556 U.S. at 678). Therefore, the Court denies Continental's alternative motion to dismiss the second and third causes of action pursuant to Rule 12(b)(6). *See e.g., Woodall v. American Airlines, Inc.*, No. 3-06-CV-0072-M, 2006 WL 2914135, at *5 (N.D.Tex.

---

[3] *Reece v. Houston Lighting & Power Co.*, 79 F.3d 485, 487 (5th Cir. 1996) is distinguishable. In that case, the Court held that the plaintiff's state law claim was preempted because it "turn[ed] on questions of promotion, seniority, and assignment to training programs, all of which are provided for in the CBA" and interpretation of the CBA was required. Here, by contrast, as discussed, the plaintiffs' right not to be discriminated against based on their military status stems from USERRA, not the CBA, and interpretation of the CBA is not required with respect to the second and third causes of action.

Oct. 6, 2006) (where the plaintiffs alleged that the defendant violated USERRA by denying them the rights to accrue certain benefits while on military leave, the court denied the defendant's motion to dismiss because the fact that the "CBAs attach different labels to different types of leave does not . . . mean that Plaintiffs have failed to state a claim upon which relief may be granted").

## VI. CONCLUSION

Based on the foregoing discussion, the Court finds that the first cause of action regarding the pension plan is precluded by the RLA, but the second and third causes of action are not. Therefore, the Court grants Continental's motion with respect to the first cause of action and denies the motion with respect to the second and third causes of action.[4]

It is so **ORDERED**.

SIGNED on this 28th day of March, 2013.

_____
Kenneth M. Hoyt
United States District Judge

---

[4] The fourth cause of action, *i.e.*, the claim that Continental has refused to hire some of the plaintiffs based on their military status was not the subject of Continental's first and current motion to dismiss, and, as such remains in the case and will proceed with the second and third causes of action.